STATE OF CONNECTICUT *v.* SANJEEB DAS
(SC 18215)

Rogers, C. J., and Norcott, Katz, Vertefeuille and Zarella, Js.

Argued December 3, 2008—officially released April 28, 2009

*Brian J. Woolf*, for the appellant (defendant).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Mirella Giambalvo*, assistant state's attorney, for the appellee (state).

ZARELLA, J. The defendant, Sanjeeb Das, appeals[1] from the trial court's dismissal of his motion to vacate the judgment of conviction and to withdraw his plea of nolo contendere in connection with the charges of sexual assault in the fourth degree; see General Statutes (Rev. to 2005) § 53a-73a; and criminal trespass in the first degree; see General Statutes § 53a-107; and the court's denial of his petition for a writ of error coram nobis. The defendant challenges the court's determination that it lacked subject matter jurisdiction to consider his motion to vacate the judgment and to withdraw his plea. The defendant also contests the court's conclusion that a writ of error coram nobis is not available because its judgment was not void or voidable. Finally, the defendant claims that the trial court improperly declined to terminate several special conditions of probation on the ground that these conditions were not contemplated by the defendant at the time of his plea.

The state urges us to affirm the decision of the trial court on these issues. Alternatively, with regard to the jurisdictional issue, the state claims that there is no "constitutional violation" exception to the general rule that the trial court's jurisdiction over a criminal case terminates upon execution of the sentence. We agree with the state's alternate ground regarding the issue of jurisdiction, and, although we proceed by a slightly different route than the trial court, we affirm as to the remaining issues.

The following undisputed facts and procedural history are relevant to this appeal. On May 16, 2007, the defendant, pursuant to an agreement with the state, entered a plea of nolo contendere to the charges of

[1] The defendant appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

sexual assault in the fourth degree and criminal trespass in the first degree. After canvassing the defendant in accordance with Practice Book § 39-19,[2] the trial court accepted the plea. The court sentenced the defendant to one year incarceration on each count, to run consecu-

[2] Practice Book § 39-19 provides in relevant part: "The judicial authority shall not accept the plea without first addressing the defendant personally and determining that he or she fully understands:

"(1) The nature of the charge to which the plea is offered;

\* \* \*

"(4) The maximum possible sentence on the charge, including, if there are several charges, the maximum sentence possible from consecutive sentences and including, when applicable, the fact that a different or additional punishment may be authorized by reason of a previous conviction; and

"(5) The fact that he or she has the right to plead not guilty or to persist in that plea if it has already been made, and the fact that he or she has the right to be tried by a jury or a judge and that at that trial the defendant has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him or her, and the right not to be compelled to incriminate himself or herself."

Prior to the court's acceptance of the defendant's plea, the following colloquy occurred:

"The Court: Mr. Das, are you under the influence of anything right now?

"The Defendant: No.

"The Court: Have you had enough time to talk about this with [defense counsel]?

"The Defendant: Yes, Your Honor.

"The Court: Has he explained to you the nature and elements of these charges?

"The Defendant: Yes, Your Honor.

"The Court: Are you pleading . . . no contest to these charges voluntarily and of your own free will?

"The Defendant: Yes, Your Honor.

"The Court: Has anyone forced you to enter your [plea]?

"The Defendant: No, Your Honor.

"The Court: By entering your [plea] today, you give up the right to plead not guilty. You give up your right not to incriminate yourself. You give up your right to have a trial before a judge or jury, to have your lawyer represent you and to confront and cross-examine the witnesses. Do you understand you're giving up those rights and there is not going to be a trial?

"The Defendant: Yes, Your Honor.

\* \* \*

"The Court: You could receive up to one year in prison on both charges, on each of those charges. So, when the sentences run consecutively, you are exposed to a sentence of up to two years in prison. Do you understand that?

tively, execution suspended, and three years of probation. At sentencing, the court also imposed several special conditions of probation "in addition to the usual terms . . . ." Specifically, the court ordered that the defendant "undergo whatever sex offender evaluation and treatment that [would be] deemed appropriate by the probation department" and "have no contact . . . with the [victim] . . . ."

On May 21, 2007, the office of adult probation advised the defendant that he would be required to comply with certain additional "[s]ex [o]ffender [c]onditions of [p]robation," including a requirement that he notify his employer of his conviction. In response, on May 24, 2007, the defendant filed a motion to modify the conditions of his probation, specifically asking the court to terminate the special sex offender conditions. At a hearing conducted on May 31, 2007, the court suspended the application of several of these conditions and stayed several others. Specifically, the court extended the deadline for the defendant to notify his employer of his conviction in order to afford the defendant and his counsel additional time to determine how to comply with the requirement in a way that would minimize any negative impact on the defendant's employment.

Dissatisfied with the trial court's refusal to terminate several of these conditions, particularly, the employer notification requirement, the defendant, on July 26, 2007, filed a motion to vacate the judgment and to withdraw his plea, and a petition for a writ of error coram nobis in the alternative. On August 1, 2007, the court heard arguments on the motion and petition. The state challenged the court's jurisdiction to consider the motion and disputed all of the defendant's arguments on the merits. At this hearing, defense counsel reminded the court that the defendant's motion for modification

"The Defendant: Yes, Your Honor."

of May 24, 2007, never had been withdrawn or definitively decided, and the court stated that it would treat that motion as an alternative prayer for relief and issue a single decision addressing all of the defendant's claims. On August 23, 2007, the court issued a lengthy and thorough memorandum of decision, in which it dismissed, on jurisdictional grounds, the defendant's motion to vacate the judgment and to withdraw his plea, rejecting the defendant's claim that the constitutional violation exception applied under the facts of the case. The court also denied both his petition for a writ of error coram nobis and his motion to modify the conditions of his probation. This appeal ensued.

We first must address the threshold matter of the trial court's jurisdiction to consider the defendant's motion to vacate the judgment and to withdraw his plea. Questions regarding subject matter jurisdiction are purely legal in nature and subject to plenary review. E.g., *Pritchard* v. *Pritchard*, 281 Conn. 262, 270, 914 A.2d 1025 (2007) ("[a] determination regarding . . . subject matter jurisdiction is a question of law . . . [and, therefore] our review is plenary" [internal quotation marks omitted]). We conclude that the trial court did not have jurisdiction to entertain the defendant's motion and, moreover, conclude that there is no constitutional violation exception to this rule extant in our law.

"The Superior Court is a constitutional court of general jurisdiction. In the absence of statutory or constitutional provisions, the limits of its jurisdiction are delineated by the common law. . . . It is well established that under the common law a trial court has the discretionary power to modify or vacate a criminal judgment before the sentence has been executed. . . . This is so because the court loses jurisdiction over the case when the defendant is committed to the custody of the commissioner of correction and begins serving

the sentence." (Citations omitted.) *State* v. *Luzietti*, 230 Conn. 427, 431–32, 646 A.2d 85 (1994). The present case does not present a challenge to this general premise. The dispute centers on whether our common law has established an exception to this rule when a defendant claims that his plea was the product of an alleged constitutional violation.

We begin with the well established premise that "the jurisdiction of the sentencing court terminates once a defendant's sentence has begun, and, therefore, that court may no longer take any action affecting a defendant's sentence unless it expressly has been authorized to act." *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 37, 779 A.2d 80 (2001); accord *State* v. *Reid*, 277 Conn. 764, 775, 894 A.2d 963 (2006); see also *State* v. *Walzer*, 208 Conn. 420, 424–25, 545 A.2d 559 (1988). This principle is memorialized in Practice Book § 39-26, which provides: "A defendant may withdraw his or her plea of guilty or nolo contendere as a matter of right until the plea has been accepted. After acceptance, the judicial authority shall allow the defendant to withdraw his or her plea upon proof of one of the grounds in Section 39-27. *A defendant may not withdraw his or her plea after the conclusion of the proceeding at which the sentence was imposed.*" (Emphasis added.)

Although there are several exceptions to this rule that afford the trial court jurisdiction over a defendant's challenge to his *sentence*, we find it instructive that none of these exceptions extends the trial court's jurisdiction to consider a postsentencing attack on the plea itself. For instance, one such exception is expressed in Practice Book § 43-22: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal

manner."[3] Another example is found in General Statutes § 53a-30 (c), which grants the trial court the authority to "modify or enlarge" the conditions of a defendant's probation "[a]t any time . . . ." Practice Book § 43-21 provides yet another example of an explicit exception to the trial court's lack of postsentencing jurisdiction, providing: "At any time during the period of a definite sentence of three years or less, the judicial authority may, after a hearing and for good cause shown, reduce the sentence or order the defendant discharged or released on probation or on a conditional discharge for a period not to exceed that to which the defendant could have been sentenced originally." None of these explicitly codified exceptions is relevant, however, to a trial court's jurisdiction to consider a defendant's postsentencing request to withdraw his plea.

The trial court, relying on Appellate Court precedent; e.g., *State* v. *Falcon,* 84 Conn. App. 429, 434, 853 A.2d 607 (2004); determined that there is another "narrow" exception pursuant to which the trial court retains jurisdiction after the imposition of sentence. The court explained: "[Another] situation in which the trial court may retain jurisdiction is in those cases [in which] 'it is apparent on the record that a defendant's constitutional rights were infringed during the plea taking proceeding or that the defendant was not advised of the consequences of his plea and was therefore denied due pro-

---

[3] We have previously defined an illegal sentence as one that "either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory." (Internal quotation marks omitted.) *Cobham* v. *Commissioner of Correction,* supra, 258 Conn. 38, quoting *State* v. *McNellis,* 15 Conn. App. 416, 443–44, 546 A.2d 292, cert. denied, 209 Conn. 809, 548 A.2d 441 (1988). To the extent that the defendant's claims are based on alleged flaws in the court's acceptance of his plea, Practice Book § 43-22 is clearly inapplicable. Moreover, the defendant does not claim, nor is there anything in the record to indicate, that his sentence is "illegal," and the defendant did not rely on § 43-22 in his motion. Thus, we need not concern ourselves with this narrow exception.

cess.' " Although we recognize that the trial court was obligated to follow this precedent of the Appellate Court, we conclude that the precedent is based on a flawed understanding of prior cases and is inconsistent with our recent opinion in *State* v. *Reid,* supra, 277 Conn. 764.[4]

The case that appears to be the source of the so-called constitutional violation exception to the jurisdiction rules is *State* v. *Schaeffer,* 5 Conn. App. 378, 498 A.2d 134 (1985). In *Schaeffer,* the defendant sought to withdraw his plea of nolo contendere two days after sentencing on the ground that the court had exceeded the state's sentencing recommendation without affording him an opportunity to withdraw his plea. Id., 379, 381. While noting that Practice Book, 1978–97, § 720, now Practice Book § 39-26, provides that " '[a] defendant may not withdraw his plea after the conclusion of the proceeding at which sentence was imposed' "; *State* v. *Schaeffer,* supra, 385; the Appellate Court nevertheless declared that "[p]ostsentence attacks on the voluntary and intelligent nature of a plea . . . may be made if the defendant has not been made aware of the true nature of the charge against him because the court failed to apprise him of a crucial element of the charge . . . or if the court failed to explain to the defendant [that] his plea operated as a waiver of constitutional rights. . . . If it is apparent on the record that a defendant's constitutional rights were infringed during the plea taking proceeding or that the defendant was not advised of the consequences of his plea and was there-

---

[4] Although the trial court referred to *Reid* in its memorandum of decision, it failed to recognize the significance of that case with respect to *Falcon* and other Appellate Court cases, which purport to expand the jurisdiction of the Superior Court by way of an exception for constitutional violations. As we explain more fully in this opinion, although *Reid* did not explicitly overrule this line of Appellate Court cases, its holding is clearly inconsistent with the existence of any such exception and, therefore, overruled those cases sub silentio.

fore denied due process, a plea may be withdrawn even after the sentence proceeding has concluded." (Citations omitted.) Id., 385–86.

In carving out this exception, *Schaeffer* relied on three cases, namely, *State* v. *Childree*, 189 Conn. 114, 454 A.2d 1274 (1983), *State* v. *Martin*, 197 Conn. 17, 495 A.2d 1028 (1985), and *State* v. *Anonymous (1980–9)*, 36 Conn. Sup. 578, 421 A.2d 557 (1980).[5] A fundamental misunderstanding of *Childree* has created confusion in our law with respect to whether there is an exception to the rule depriving the trial court of jurisdiction to consider a motion to withdraw a plea once the sentence has been executed. In *Childree*, unlike in the present case, the defendant had timely appealed from the judgment of conviction, and, therefore, this court undoubtedly had jurisdiction over the appeal. See *State* v. *Childree*, supra, 119. *Childree* concerned only the availability of *appellate review* for a defendant's claim that his guilty plea had been constitutionally deficient when such a claim was raised for the first time on appeal. See id. The court stated: "We begin our analysis by noting that the proper procedure for raising a claim that a guilty plea was not knowingly and voluntarily made is to make that claim in the trial court in the first instance. . . . There is no explanation on the record why this procedure was not followed. Nonetheless, because the error claimed by the defendant involves the violation of a fundamental constitutional right, *we will consider it for the first time on appeal*." (Citation omitted; emphasis added.) Id. Thus, it is apparent that the defendant in *Childree* was not seeking to challenge his plea by way of a motion to withdraw in the trial

---

[5] Because *Martin* relied directly and exclusively on *Childree* and *Anonymous (1980–9)* in support of its application of this purported exception; see *State* v. *Martin*, supra, 197 Conn. 21–22, we need not address it separately.

court but, rather, via a direct and timely appeal.[6] See id. The issues of subject matter jurisdiction and preservation of claims for appellate review are separate and independent considerations. See footnote 6 of this opinion.

In *Childree*, this court was applying the well established exception to the general rule of nonreviewability for unpreserved claims rather than establishing a new exception affording trial courts subject matter jurisdiction over postsentencing plea challenges. Our decision to review the defendant's unpreserved claims in *Childree* was premised on the pre-*Golding*[7] framework set forth in *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973) ("There appear . . . to exist only two situations that may constitute 'exceptional circumstances' such that newly raised claims can and will be considered by this court. The first is . . . [when] a new constitutional right not readily foreseeable has arisen between the time of trial and appeal. . . . The second 'exceptional circumstance' may arise [when] the record adequately supports a claim that a litigant has clearly been deprived of a fundamental constitutional right and a

---

[6] The procedural posture of the appeal is the most critical element in determining jurisdiction under these circumstances. If a defendant files a timely direct appeal in which he challenges the constitutionality of his plea, an appellate court clearly has subject matter jurisdiction to consider the propriety of the judgment of conviction rendered in accordance with that plea, even if such a claim must undergo an analysis under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), or the plain error doctrine; see Practice Book § 60-5; before it can be reviewed. See *State* v. *Childree*, supra 189 Conn. 119; see also footnote 8 of this opinion. If, on the other hand, a defendant seeks to challenge the trial court's dismissal of a postsentencing motion to withdraw his plea, over which that court lacks jurisdiction, this court also would lack jurisdiction to review the merits of the trial court's dismissal of that motion. The confusion caused by these two procedural scenarios and their significance with respect to the issues of reviewability and jurisdiction have, in our view, largely created the false notion of a constitutional violation exception that we address in the present case.

[7] *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).

fair trial." [Citation omitted.]).[8] This fact was made explicit in *Childree* when we cited to *Evans* in support of our determination to review "for the first time on appeal" the defendant's claim that his plea was unknowing and involuntary. *State* v. *Childree*, supra, 189 Conn. 119.[9]

The most we can extrapolate from *Childree*, therefore, is that a defendant who seeks to challenge his plea after being taken in execution of his sentence may do so if he directly appeals from the judgment of conviction in a timely manner and convinces the reviewing court that he is entitled to review of his claim under the *Golding* doctrine.[10] In other words, such claims are

---

[8] *Childree* was decided prior to this court's opinion in *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), in which we established a framework for assessing, inter alia, the reviewability of unpreserved constitutional claims: "Under *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Fagan*, 280 Conn. 69, 89–90, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007).

[9] In *Childree*, we also cited to *State* v. *Godek*, 182 Conn. 353, 356, 438 A.2d 114 (1980), cert. denied, 450 U.S. 1031, 101 S. Ct. 1741, 68 L. Ed. 2d 226 (1981), another pre-*Golding* case dealing with exceptions to the nonreviewability of unpreserved claims. *State* v. *Childree*, supra, 189 Conn. 119.

[10] Pursuant to Practice Book § 39-26, "[a] defendant may withdraw his or her plea of guilty or nolo contendere as a matter of right until the plea has been accepted." Of course, a plea withdrawn in this fashion ordinarily will not be appealed unless the court declines to allow such a withdrawal, in which case the issue would be preserved, and there would be no *Golding* problem. Furthermore, even after acceptance, but prior to the conclusion of the proceeding at which sentence is imposed, a defendant may move to withdraw his plea in the trial court "upon proof of one of the grounds in [Practice Book §] 39-27." Practice Book § 39-26. Even if a defendant moves to withdraw his plea under either of these circumstances, the claim would likely be considered preserved and could be reviewed on appeal without resort to special exceptions such as *Golding* or the plain error doctrine.

to be treated on par with all other unpreserved claims. The mere fact that the constitutional validity of a defendant's plea is not necessarily immune from appellate review, however, does not alter the fact that once a defendant's sentence is executed, the trial court lacks jurisdiction to entertain any claims regarding the validity of that plea in the absence of a statute or rule of practice to the contrary.[11] See *State* v. *Reid*, supra, 277 Conn. 773–76.

To the extent that cases such as *State* v. *Martin*, supra, 197 Conn. 21–22, *State* v. *Anonymous (1980-9)*, supra, 36 Conn. Sup. 579–80, *State* v. *Falcon*, supra, 84 Conn. App. 433–36, *State* v. *Perez*, 85 Conn. App. 27, 37–38, 856 A.2d 452, cert. denied, 271 Conn. 933, 859 A.2d 931 (2004),[12] and *State* v. *Schaeffer*, supra, 5 Conn. App. 385–86, suggest that there exists in our jurisprudence a constitutional violation exception to the trial court's lack of jurisdiction over a defendant's motion to withdraw his plea after the sentence has been executed, those cases are hereby overruled. In fact, that aspect of these cases was implicitly overruled by our decision

---

[11] For instance, in *State* v. *Hatch*, 75 Conn. App. 615, 816 A.2d 712, cert. granted, 263 Conn. 920, 822 A.2d 244 (2003) (appeal withdrawn May 14, 2004), cert. denied, 270 Conn. 901, 853 A.2d 520 (2004), the defendant, Edward T. Hatch, asserted a similar challenge to the one that the defendant raises in this case regarding several special conditions of probation that allegedly were not disclosed during the plea canvass and thus provided a basis for the withdrawal of a plea after sentence was imposed. See id., 617. Hatch made the claim on direct appeal. See id. The Appellate Court noted that Hatch had failed to move to withdraw his plea pursuant to Practice Book § 39-26 and, therefore, "arguably failed to preserve his claim before the trial court." Id., 618. The court proceeded to examine the reviewability of Hatch's claim under the *Golding* doctrine, with no mention of any exception that would have conferred jurisdiction on the trial court to hear the claim after Hatch's sentence was imposed. Id., 618–25.

[12] We note that both *Falcon* and *Perez* specifically rely on *State* v. *Schaeffer*, supra, 5 Conn. App. 378, in support of their application of this purported exception. See *State* v. *Perez*, supra, 85 Conn. App. 37; *State* v. *Falcon*, supra, 84 Conn. App. 433.

in *Reid*.[13] The essential facts and procedural posture in *Reid* are strikingly similar to those presently before us.[14] In that case, the defendant, Mark Reid, filed a motion to withdraw his plea on the ground that it was not knowing and voluntary. See *State* v. *Reid*, supra, 277 Conn. 771. Reid filed the motion several years after his sentence was executed.[15] See id., 770–71. "The trial court . . . noted that [Reid's] motion to withdraw the plea was untimely . . . but concluded that, because [Reid] had asserted constitutional claims that could be reviewed, it would consider the motion." Id., 771. The trial court ultimately denied the motion on the merits; id.; concluding that Reid had failed to demonstrate "a clear constitutional violation" or "a clear deprivation of his right to a fair hearing." Id., 772.

Reid appealed from the trial court's denial of his motion to withdraw his plea. See id. On appeal, the state asserted that the trial court lacked subject matter jurisdiction to consider Reid's motion. Id. Despite the ostensibly constitutional basis for Reid's challenge, we held that "the trial court lacked jurisdiction to hear and determine [Reid's] motion to withdraw." Id., 776. We stated that, "[u]nder well established law, it is clear that the trial court's lack of subject matter jurisdiction to hear the motion to withdraw rendered void its denial of that motion." Id. Consistent with our settled jurispru-

---

[13] Indeed, appellate counsel for the defendant conceded this point at oral argument when he admitted that he was asking this court to overrule *Reid*.

[14] The primary factual distinction between *Reid* and this case is the interval between the execution of sentence and the motion to withdraw, a distinction that is irrelevant for purposes of our analysis.

[15] In this somewhat unusual case, Reid was an alien who was the subject of deportation proceedings because of a separate, later conviction for sexual assault. *State* v. *Reid*, supra, 277 Conn. 770. When the sexual assault conviction was subsequently vacated, the federal Department of Homeland Security substituted Reid's earlier assault conviction, which had resulted from the challenged guilty plea, as the basis for deporting him. Id., 771. After Reid had been deported, he sought to challenge the constitutionality of his guilty plea on due process grounds. Id.

dence regarding jurisdiction, we reached this conclusion *before* considering the merits of the underlying claim, thereby foreclosing the possibility of the existence of a constitutional violation exception to the trial court's lack of jurisdiction.[16] The unmistakable implication of *Reid* is its refutation of the exception contemplated by the trial court and urged by the defendant in the present case.

Having determined that the trial court lacked jurisdiction to consider the defendant's postsentencing motion to withdraw his plea,[17] we must nevertheless address the defendant's claim that the trial court improperly denied his petition for a writ of error coram nobis. The trial court denied the defendant's petition on the ground that he had "not proven that the judgment [of conviction] complained of was void or voidable." Although, in our view, the court improperly considered the merits of the defendant's petition, we nevertheless agree that a writ of error coram nobis is inappropriate in this case.

"A writ of error coram nobis is an ancient common-law remedy which authorized the trial judge, within three years, to vacate the judgment of the same court if the party aggrieved by the judgment could present facts, not appearing in the record, which, if true, would show that such judgment was void or voidable. *Montville* v. *Alpha Mills Co.*, 86 Conn. 229, 233, 84 A. 933 (1912). . . . The facts must be unknown at the time of the trial without fault of the party seeking relief. *State* v. *Becker*, 263 Minn. 168, 115 N.W.2d 920 (1962). . . .

---

[16] Although we deemed it necessary, under the unique facts of *Reid*, to exercise our supervisory authority to review Reid's claim; *State* v. *Reid*, supra, 277 Conn. 778; that fact is irrelevant in determining whether a trial court has jurisdiction to hear the claim in the first instance.

[17] This is not to say that there are no circumstances in which the trial court maintains continuing jurisdiction. For instance, as we noted previously in this opinion, Practice Book § 43-22 authorizes the trial court to correct an illegal sentence "at any time . . . ."

*State* v. *Grisgraber,* [183 Conn. 383, 385, 439 A.2d 377 (1981)]. A writ of error coram nobis lies only in the unusual situation [in which] no adequate remedy is provided by law. . . . Moreover, when habeas corpus affords a proper and complete remedy the writ of error coram nobis will not lie. . . . Id." (Internal quotation marks omitted.) *State* v. *Henderson,* 259 Conn. 1, 3, 787 A.2d 514 (2002).

A defendant seeking to withdraw his plea after his sentence has been executed has several avenues available to challenge the constitutionality of his plea. First, a defendant may file a timely appeal in accordance with Practice Book § 63-1 and request review of his unpreserved claims under *Golding* or the plain error doctrine.[18] Alternately, a defendant may file a petition for a writ of habeas corpus to challenge the constitutionality of his plea. See, e.g., *Wilson* v. *Office of Adult Probation,* 67 Conn. App. 142, 143, 786 A.2d 1120 (2001). Of course, if this claim is not first raised on direct appeal, the defendant must satisfy "the cause and prejudice standard of *Wainwright* v. *Sykes,* 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), for determining the reviewability of habeas claims that were not properly pursued on direct appeal. . . . Unless the [defendant] can satisfy that standard, [he is] not entitled to review of [his] claims on the merits." (Internal quotation marks omitted.) Id., 144; see also *Johnson* v. *Commissioner,* 218 Conn. 403, 417, 589 A.2d 1214 (1991) (adopting federal cause and prejudice standard for "habeas review with respect to constitutional claims not properly preserved because of a trial court default").

---

[18] "[The plain error] doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party." *State* v. *Myers,* 290 Conn. 278, 289, 963 A.2d 11 (2009).

We conclude that the defendant has failed to demonstrate that this case presents us with the extraordinary circumstances necessary to justify the issuance of a writ of error coram nobis. We reach this conclusion because the defendant may yet avail himself of a writ of habeas corpus and, therefore, has not met his burden of demonstrating that he has no adequate remedy available to him. Thus, we conclude that the trial court properly denied the defendant's petition for a writ of error coram nobis.

We turn now to address the defendant's final claim that the trial court improperly denied his motion to modify the conditions of his probation. First, to the extent that the defendant grounds his claim on the allegation that the conditions imposed were not in accord with his understanding of his plea, it is precluded by the same jurisdictional bar as his more direct attempt to withdraw the plea itself. The trial court, however, treated this claim as a motion to modify the conditions of probation and denied it on the merits.[19] Before this court, the defendant does not challenge the substance of the trial court's decision; in fact, the defendant "concedes that the office of probation has the statutory

[19] It appears from the record that the defendant initially filed a motion to modify the conditions of his probation on May 24, 2007. The court held two hearings on this motion on May 31, 2007, and July 10, 2007, eventually terminating several conditions and staying others. Among the conditions stayed were the special sex offender conditions at issue in this appeal. On July 26, 2007, before the trial court took any further action with respect to these conditions, the defendant filed the motion to vacate the judgment of conviction and to withdraw his plea, the dismissal of which forms the basis for this appeal. At the August 1, 2007 hearing on this motion, the court indicated that it would take up the motion for modification as "an alternative prayer for relief." This explains the portion of the trial court's memorandum of decision dedicated to a detailed treatment of a motion to modify the conditions of the defendant's probation pursuant to General Statutes § 53a-30 (c), which provides in relevant part: "At any time during the period of probation or conditional discharge, after hearing and for good cause shown, the court may modify or enlarge the conditions, whether originally imposed by the court under this section or otherwise . . . ."

authority to impose the special sex offender conditions of probation and [the] requirement of employer notification" pursuant to § 53a-30. Rather, the defendant seeks to have certain conditions modified on the basis of his claims regarding the plea agreement, claims that the trial court had no jurisdiction to consider. To the extent that the trial court exercised its statutory authority to review and modify conditions of probation under § 53a-30 (c), we find no abuse of discretion.

The dismissal of the defendant's motion to vacate the judgment of conviction and to withdraw his plea of nolo contendere, and the denial of the defendant's petition for a writ of error coram nobis and motion to modify the conditions of his probation are affirmed.

In this opinion the other justices concurred.