******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* VINCENT FAIRCHILD
## (AC 35426)

Gruendel, Keller and Flynn, Js.

*Argued November 12, 2014—officially released January 27, 2015*

(Appeal from Superior Court, judicial district of Danbury, geographical area number three, Blawie, J.)

*Gwendolyn S. Bishop*, assigned counsel, for the appellant (defendant).

*Jonathan M. Sousa*, special deputy assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *Sean P. McGuinness*, assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Vincent Fairchild, appeals from the judgment of the trial court denying his motion to correct an illegal sentence. On appeal, the defendant claims that the trial court improperly denied his motion to correct an illegal sentence because the sentencing court failed to give him adequate notice of the date of the sentencing hearing, and thereby denied him a meaningful opportunity for allocution and violated his due process right to contest the evidence upon which the court relied for sentencing purposes.[1] We affirm the judgment of the trial court.

We conclude that the court did not deny the defendant a meaningful opportunity for allocution or violate his due process right to contest the evidence upon which the court relied for sentencing purposes. Accordingly, the court properly denied the defendant's motion to correct an illegal sentence.

The state argues that the court lacked jurisdiction over the defendant's motion to correct an illegal sentence. Practice Book § 43-22 permits the court to correct invalid sentences "at any time . . . ." The "at any time" language of this section is "limited by the common-law rule that a trial court may not modify a sentence if the sentence was valid and its execution has begun." (Internal quotation marks omitted.) *State* v. *Casiano*, 122 Conn. App. 61, 67, 998 A.2d 792, cert. denied, 298 Conn. 931, 5 A.3d 491 (2010). However, even if the sentence imposed has begun, it may still be modified under the common law if it is invalid and its invalidity stems from its illegality or the fact that it was imposed in an illegal manner. Id. Because the defendant claims that his sentence was imposed in an illegal manner on one of the grounds recognized by the common law, we conclude that the court properly exercised jurisdiction over his motion.

The record reveals the following relevant facts and procedural history. On January 24, 2012, the defendant entered a guilty plea under the *Alford*[2] doctrine to the charge of burglary in the third degree in violation of General Statutes § 53a-103. He also entered guilty pleas, in which he admitted guilt, to the charges of larceny in the third degree in violation of General Statutes § 53a-124, larceny in the sixth degree in violation of General Statutes § 53a-125b, and operating a motor vehicle while his license was under suspension in violation of General Statutes § 14-215. The defendant entered his pleas pursuant to a *Garvin* agreement.[3] Under the terms of the agreement, the defendant would receive a total effective sentence of five years incarceration, suspended after fourteen months, followed by a three year period of probation, so long as he appeared before the court for the sentencing hearing and was not arrested again before that time. If the defendant violated the terms of

the agreement, the court, in its discretion, would be able to sentence him to a period of incarceration of no more than ten years and three months.

It is undisputed that the sentencing hearing was initially scheduled for March 6, 2012. On that date, defense counsel was ill and was not able to attend the hearing. The court, *Blawie, J.*, continued the sentencing to March 12, 2012. On March 12, 2012, the defendant requested a continuance, which the court granted. The hearing was continued to April 20, 2012, and on that day the defendant requested a continuance again, which the court granted. The hearing was continued to May 18, 2012.

On May 18, 2012, the court held the sentencing hearing. Between the time the defendant entered his guilty pleas on January 24, 2012, and the sentencing hearing on May 18, 2012, he was arrested twice on new criminal charges, which he was alleged to have committed on two separate dates in February, 2012. At sentencing, the court made the following finding with respect to at least one of the new arrests: "[U]nfortunately for [the defendant] and for society, the court made a finding of probable cause, signing an arrest warrant for [the defendant] for burglary and larceny after [the defendant] entered a plea and while he was at liberty awaiting sentencing . . . ." The court further noted that the defendant had violated the *Garvin* agreement and was therefore subject to "an enhanced possible penalty of up to ten years . . . ." The court stated that it was "inclined to proceed to sentencing" on that day because the defendant's criminal cases had "been down in excess of twenty-five times—in fact, the burglary/larceny's been down [thirty-nine] times; the larceny six, [twenty-eight] times; the 14-140 suspension, [forty-three] times . . . ."

The court then afforded defense counsel and the defendant an opportunity to address the court. Both defense counsel and the defendant emphasized that the defendant's criminal actions resulted from his drug addiction. The court sentenced the defendant to a total effective sentence of seven years incarceration on the charges of burglary in the third degree, larceny in the third degree, and larceny in the sixth degree. This sentence was three years and three months less than the maximum sentence he could have received as a result of his violation of his *Garvin* agreement. He was given an unconditional discharge on the charge of operating a motor vehicle while his license was under suspension.

On September 25, 2012, after he had begun serving his sentence, the defendant filed a motion to correct an illegal sentence pursuant to Practice Book § 43-22. In support of his motion, the defendant relied on Practice Book § 43-10, which states in relevant part: "Before imposing a sentence . . . the judicial authority shall, upon the date previously determined for sentencing,

conduct a sentencing hearing . . . ." The defendant also relied on § 43-10 (3), which states in relevant part: "The judicial authority shall allow the defendant a reasonable opportunity to make a personal statement in his or her own behalf and to present any information in mitigation of the sentence." The defendant conceded that he was given the right to make a statement on his own behalf but claimed that because he was unaware that he would be sentenced on May 18, 2012, he was unprepared to present witnesses or materials in mitigation of punishment and thus denied the opportunity to meaningfully exercise his right of allocution. He argued that he was unable to present mitigating evidence because the matter had not been set down on a "date previously determined for sentencing," as required by § 43-10.

The court held a hearing on the defendant's motion on December 14, 2012. At the hearing, defense counsel stated: "I have put on the record previously, Judge, that I should have done certain things as his attorney and I did not do them . . . namely, the primary thing I can think of is that I should have requested a continuance on the record and I didn't do it." The court denied the defendant's motion, finding that "the defendant has had all the process he was due under both the law and the Practice Book in procedure here." The court also noted that "[t]he court believes that defense counsel is falling on her sword on behalf of a defendant who received a harsher sentence than perhaps her client anticipated, but one the court felt was fully justified by the law and the facts."

The court subsequently issued a thorough memorandum of decision explaining its decision to deny the defendant's motion. In its memorandum, the court stated: "The sentence imposed by the court was entirely supported by the record and within the parameters of the plea agreement. It was imposed after notice, and after hearing from both the defendant himself and defense counsel. . . . The defendant claims in his motion that he was unprepared to present mitigation evidence and was unable to allocute meaningfully when he was sentenced. Nevertheless, the defendant and his experienced counsel chose to remain silent on this issue on May 18, 2012, and did not move for a continuance or otherwise alert the court to any supposed lack of preparation." (Citations omitted.) The court reiterated its finding that the defendant had received all the due process that he was entitled to and that his sentence was not illegal. This appeal followed.

On appeal, the defendant claims that the trial court improperly denied his motion to correct an illegal sentence because the sentencing court failed to give him adequate notice of the date of the sentencing hearing, and thereby denied him a meaningful opportunity for allocution and violated his due process right to contest

the evidence upon which the court relied for sentencing purposes. He argues that, at the May 18, 2012 sentencing hearing, he "did not have the opportunity to present any witnesses, had no prepared written statement, and most importantly, was not prepared to contest the evidence upon which his increased sentence was based, the two new arrests" that resulted in the violation of his *Garvin* agreement. The state argues that the court lacked jurisdiction over the defendant's motion to correct an illegal sentence and should have dismissed it. The state argues in the alternative that the court properly denied the motion.

I

We first consider whether the court had jurisdiction to act on the defendant's motion to correct an illegal sentence. "It is axiomatic that once the issue of subject matter jurisdiction is raised, it must be immediately acted upon by the court." *Gurliacci* v. *Mayer*, 218 Conn. 531, 545, 590 A.2d 914 (1991). "A determination regarding . . . subject matter jurisdiction is a question of law . . . [and, therefore] our review is plenary." (Internal quotation marks omitted.) *Khan* v. *Hillyer*, 306 Conn. 205, 209, 49 A.3d 996 (2012).

"The Superior Court is a constitutional court of general jurisdiction. . . . In the absence of statutory or constitutional provisions, the limits of its jurisdiction are delineated by the common law. . . . [A] generally accepted rule of the common law is that a sentence cannot be modified by the trial court . . . if the sentence was valid and execution of it has commenced. . . . This court . . . repeatedly has deemed this limitation jurisdictional." (Citations omitted; footnote omitted; internal quotation marks omitted). *State* v. *Parker*, 295 Conn. 825, 834, 992 A.2d 1103 (2010).

Practice Book § 43-22 sets forth the procedural mechanism for correcting invalid sentences. Section 43-22 states in relevant part: "The judicial authority may at any time correct an illegal sentence . . . or it may correct a sentence imposed in an illegal manner . . . ." "Practice Book rules do not [however] ordinarily define subject matter jurisdiction. General Statutes § 51-14 (a) [provides that] . . . [s]uch rules shall not abridge, enlarge or modify any substantive right nor the jurisdiction of any of the courts. . . . Because the judiciary cannot confer jurisdiction on itself through its own rule-making power, [Practice Book] § 43-22 is limited by the common-law rule that a trial court may not modify a sentence if the sentence was valid and its execution has begun." (Internal quotation marks omitted.) *State* v. *Parker*, supra, 295 Conn. 836.

"Connecticut has recognized two types of circumstances in which the court has jurisdiction to review a claimed illegal sentence. The first of those is when the sentence itself is illegal, namely, when the sentence

either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory. . . . The other circumstance in which a claimed illegal sentence may be reviewed is that in which the sentence is within relevant statutory limits, but was imposed in a way which violates [a] defendant's right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right to be sentenced by a judge relying on accurate information or considerations solely in the record, or his right that the government keep its plea agreement promises . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Lawrence*, 91 Conn. App. 765, 773–74, 882 A.2d 689 (2005), aff'd, 281 Conn. 147, 913 A.2d 428 (2007); see also *State* v. *Parker*, supra, 295 Conn. 839.

"In order for the court to have jurisdiction over a motion to correct an illegal sentence after the sentence has been executed, the sentencing proceeding, and not the [proceedings] leading to the conviction, must be the subject of the attack." (Internal quotation marks omitted.) *State* v. *Casiano*, supra, 122 Conn. App. 68 (holding that court did not have jurisdiction over motion to correct illegal sentence where defendant challenged validity of his guilty pleas).

In the present case, the defendant claims that his sentence is illegal, not because it exceeded statutory limits or the maximum limits found in the plea agreement, but because he was denied his right to due process in the manner the sentence was imposed by the sentencing court's failure to provide him with adequate notice of and time to prepare for the sentencing hearing. He argues that the court's actions denied him a meaningful opportunity to speak on his own behalf, to present mitigating evidence, and to contest the evidence upon which the court relied for sentencing purposes.

The state argues that the court lacked jurisdiction over the defendant's motion to correct an illegal sentence. The state contends that "[t]he substance of the defendant's claim does not constitute a legally cognizable ground for correcting an illegal sentence or a sentence imposed in an illegal manner because the issue was not raised during sentencing, and, therefore, the claim does not attack any specific action of the sentencing court that rendered his sentencing proceeding unfair or improper." We do not agree.

The state appears to argue that the court lacked jurisdiction over the defendant's motion because the defendant, during his sentencing hearing, failed to preserve his claim that he was not given adequate notice of the date of the sentencing hearing. The fact that a party raises an unpreserved claim does not deprive the court of jurisdiction over that claim. See *State* v. *Das*, 291 Conn. 356, 366, 968 A.2d 367 (2009) (noting that "[t]he issues of subject matter jurisdiction and preservation

of claims for appellate review are separate and independent considerations"). "Subject matter jurisdiction does not rest on the viability of the claims that a court is asked to adjudicate." *Olympus Healthcare Group, Inc.* v. *Muller*, 88 Conn. App. 296, 300, 870 A.2d 1091 (2005). "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Citations omitted; internal quotation marks omitted.) *Amodio* v. *Amodio*, 247 Conn. 724, 727–28, 724 A.2d 1084 (1999).

The state relies on *State* v. *Parker*, supra, 295 Conn. 825, to support its argument that the court lacked jurisdiction over the defendant's motion. In *Parker*, our Supreme Court held that the trial court properly had determined that it lacked jurisdiction over the defendant's motion to correct an illegal sentence. Id., 827. The defendant in *Parker* pleaded guilty to murder and was convicted and sentenced to thirty years imprisonment. Id., 828. He then pursued an appeal on claims "relating to the trial court's acceptance of his guilty plea and its subsequent refusal to allow him to withdraw that plea at the sentencing proceedings despite his expressions of dissatisfaction with his counsel." Id., 830. This court affirmed his conviction and sentence. *State* v. *Parker*, 67 Conn. App. 351, 352, 786 A.2d 1252 (2001), cert. denied, 281 Conn. 912, 916 A.2d 54 (2007).

After his conviction was affirmed by this court and certification to appeal was denied by our Supreme Court, the defendant filed a motion in the Superior Court to correct an illegal sentence, in which he claimed that his sentence was imposed in an illegal manner. *State* v. *Parker*, supra, 295 Conn. 830. Specifically, he maintained that his right not to be sentenced on the basis of inaccurate information was violated by the fact that (1) he was not given an opportunity to review the presentence investigation report, thereby denying him an opportunity to address inaccuracies and mistakes in the report, and (2) he had been deprived of effective assistance of counsel because his attorney failed to review the report with him and neglected to bring inaccuracies and mistakes in the report to the court's attention. Id., 827–28.

On appeal, our Supreme Court rejected both of the defendant's arguments. The court concluded that "[t]he defendant's claimed constitutional basis for jurisdiction—the right not to be sentenced on the basis of

inaccurate information—is predicated entirely on his claim that the rules of practice and the statutes afford him a personal right to review, and an opportunity to seek corrections to, the presentence report, a claim that we have rejected. In his motion to correct, he did not advance an independent constitutional claim that the purported inaccuracies were materially false and that the sentencing court had relied on them in sentencing him. Moreover, an essential fact that must be inferred from the defendant's claims is that no one alerted the court to any inaccurate information in the report. Therefore, all we are left with is the defendant's claim as it relates to the conduct of his counsel. . . . [T]his court consistently has adhered to a rule that, absent either specific authorization to raise such claims in a forum other than a habeas court or construction of such a claim to implicate improper conduct by the trial court, the exclusive forum for adjudicating ineffective assistance of counsel claims is by way of habeas proceedings." (Citations omitted; footnotes omitted; internal quotation marks omitted.) Id., 849–51.

In the present case, the state claims that our Supreme Court in *Parker* held that the trial court did not have jurisdiction over the defendant's motion to correct an illegal sentence because the defendant did not raise the issue of possible inaccuracies and mistakes in the presentence investigation report before the court. We do not read *Parker* to hold that the defendant's failure to preserve his claims by raising them before the trial court resulted in the court's lack of jurisdiction over his motion. Rather, our Supreme Court held that the trial court lacked jurisdiction because the defendant's claims that he did not personally have the opportunity to review the presentence investigation report, which he alleged contained inaccuracies, and that his counsel was ineffective did not "fall within the limited circumstances under which the trial court has jurisdiction to correct a sentence imposed in an illegal manner . . . ." Id., 828.

The defendant in the present case claims that his sentence was imposed in an illegal manner because the trial court denied him a meaningful opportunity for allocution and violated his due process right to contest the evidence upon which the court relied for sentencing purposes. He does not challenge the validity of his guilty pleas or his underlying conviction, nor does he raise an ineffective assistance of counsel claim that should be addressed in a habeas proceeding. Rather, the defendant's claim challenges a specific claimed inaction of the sentencing court during the sentencing proceedings—namely, that the court failed to provide him with adequate notice of the date on which he would be sentenced and thereby denied him a meaningful opportunity for allocution and violated his right to due process. Because the defendant seeks to correct his sentence on one of the common-law grounds permitted under

Practice Book § 43-22, as that section has been interpreted by our appellate courts; *State* v. *Casiano*, 282 Conn. 614, 624 n.14, 922 A.2d 1065 (2007); *State* v. *Taylor*, 91 Conn. App. 788, 792–93, 882 A.2d 682, cert. denied, 276 Conn. 928, 889 A.2d 819 (2005); *State* v. *Lawrence*, supra, 91 Conn. App. 773–74; *State* v. *McNellis*, 15 Conn. App. 416, 443–44 and 443 n.10, 546 A.2d 292, cert. denied, 209 Conn. 809, 548 A.2d 441 (1988); see also *State* v. *Baker*, 141 Conn. App. 669, 674, 62 A.3d 595 (deciding on merits defendant's claim that trial court improperly denied his motion to correct illegal sentence because he was denied reasonable opportunity for allocution), cert. denied, 308 Conn. 950, 67 A.3d 292 (2013); and his claim challenges the sentencing proceedings; *State* v. *Casiano*, supra, 122 Conn. App. 68; we conclude that the court properly exercised jurisdiction over the defendant's motion to correct an illegal sentence.

## II

We next turn to the merits of the defendant's claim that the trial court improperly denied his motion to correct an illegal sentence. Simply put, the defendant claims that he was denied due process of law because he lacked notice that he would be sentenced on May 18, 2012, and therefore was not given a fair opportunity to exercise his right of allocution or to contest the evidence upon which the court relied for sentencing purposes. We disagree.

This claim was not preserved but is nevertheless reviewable. "Both the trial court and this court, on appeal, have the power, at any time, to correct a sentence that is illegal." (Internal quotation marks omitted.) *State* v. *Cator*, 256 Conn. 785, 804, 781 A.2d 285 (2001); see also *State* v. *Ortiz*, 83 Conn. App. 142, 166, 848 A.2d 1246 (holding that unpreserved claim that sentence was illegal was reviewable on direct appeal, even when defendant did not object when it was imposed or move to correct it), cert. denied, 270 Conn. 915, 853 A.2d 530 (2004); see *State* v. *Kosuda*, 85 Conn. App. 192, 195 n.1, 856 A.2d 480 (2004) (same).

We now turn to the applicable standard of review. "[A] claim that the trial court improperly denied a defendant's motion to correct an illegal sentence is reviewed pursuant to the abuse of discretion standard." *State* v. *Tabone*, 279 Conn. 527, 534, 902 A.2d 1058 (2006). "In reviewing claims under the abuse of discretion standard, we have stated that the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Cancel*, 275 Conn. 1, 15, 878 A.2d 1103 (2005).

The defendant claims that the court improperly denied his motion to correct an illegal sentence because he "notably did not have the opportunity to present any witnesses, had no prepared written statement, and most importantly, was not prepared to contest the evidence

upon which his increased sentence was based, the two new arrests" that constituted a violation of his *Garvin* agreement.

In *State* v. *Stevens*, 85 Conn. App. 473, 478, 857 A.2d 972 (2004), rev'd, 278 Conn. 1, 895 A.2d 771 (2006), one of this court's prior *Garvin* cases, Judge West noted epigrammatically that "being arrested, similar to being struck by lightning, can be the result of being in the wrong place at the wrong time."[4] Following Judge West's trenchant observation, our Supreme Court granted certification to appeal and was given an opportunity to further flesh out its *Garvin* jurisprudence. *State* v. *Stevens*, 278 Conn. 1, 4, 895 A.2d 771 (2006). Our Supreme Court, in reviewing this court's decision, clarified for the first time that when probable cause supports a postplea, presentence arrest, that arrest can be a proper basis for an enhanced sentence under a *Garvin* agreement if the information upon which the sentencing court relied was relevant and served as a reliable indicator for sentencing purposes. Id., 12–13.

In the present case, as to the defendant's subsequent arrests, the prosecutor noted on the record at the sentencing hearing that the defendant "stole approximately $469.80 worth of merchandise from the Target department store in Bethel. So, in addition to the burglary . . . in which he entered a deceased person's home and took . . . a car on a flatbed, he also picked up a larceny from the Target store." The sentencing court also found that "the court made a finding of probable cause, signing an arrest warrant for [the defendant] for burglary and larceny after [the defendant] entered a plea and while he was at liberty awaiting sentencing . . . ." The prosecutor's statement of the factual basis for the presentence arrests and the fact that at least one of the arrests resulted from a warrant adequately supported the court's finding of probable cause, as required by *Stevens*; *State* v. *Stevens*, supra, 278 Conn. 12–13; that the defendant had violated his *Garvin* agreement and that an enhanced sentence could therefore be imposed.

Practice Book § 43-10 (3) requires the court to "allow the defendant a reasonable opportunity to make a personal statement in his or her own behalf and to present any information in mitigation of the sentence." Section 43-10 (1) states in relevant part: "The judicial authority shall afford the parties an opportunity to be heard and, in its discretion, to present evidence on any matter relevant to the disposition . . . ." Additionally, "due process requires that the defendant be given the opportunity to contest the evidence upon which the trial court relies for sentencing purposes . . . ." (Citations omitted.) *State* v. *Stevens*, supra, 278 Conn. 12. The record does not support the defendant's claim that he was denied a meaningful opportunity to speak on his own behalf, present mitigating evidence, and contest

the evidence on which the sentencing court relied.

It is clear from the record that the court, in accordance with Practice Book § 43-10 (3), afforded the defendant and his counsel an opportunity to address the court and speak in mitigation of punishment. The court stated on the record to the defendant that it would "hear first from [the prosecutor] and then [defense counsel], and then you, sir, whatever you wish to say . . . ."

Defense counsel and the defendant both referenced the defendant's addiction to drugs in their statements to the court. Defense counsel stated: "I look at [the defendant] and I think what a tragedy it is because he is his own worst enemy. He has a very, very serious disease, and it's a disease which has guided so many of the choices that he's made in his life in recent years. It's what put him here today, you know, and some people who are addicted to substances have more, or better, management skills with the disease than others. Clearly, [the defendant] entered a plea and has two subsequent arrests, and there's nothing I can say about that other than, to me, it just shows how desperately [the defendant] is addicted and how those demons really drive him to make the choices that he's made. . . . We have two new offenses. They're going to carry separate penalties and maybe more enhanced penalties, and all of this behavior and all of his choices are a result from a serious drug addiction. So, I'm just going to ask the court to be merciful."

The defendant made similar comments to the court, stating: "I have a serious drug problem that I've been trying to fight for years. Every time I do good it seems I go—I go back a step, fall back off . . . I would just— I'm just asking for lenience and to keep in mind that— that my addiction played a key role in everything."

In its memorandum of decision, the trial court noted that "[t]he right of a defendant to be heard by the court . . . does not carry with it the right to decide for the court the weight it must attribute to such evidence. The record bears out that the defendant's substance abuse history and related criminal difficulties stemming from his addiction were repeatedly invoked as mitigating factors by both the defendant and counsel in this case. The sentencing court, in its discretion and in light of the totality of the circumstances, including the crimes at issue, the defendant's prior criminal history, his failed probations, his multiple files and his unwillingness to take advantage of inpatient treatment, simply chose not to credit such addiction evidence with the weight the defendant sought to ascribe to it, either as an excuse or as a justification for his continued pattern of criminality."

It is also clear from the record that, in accordance with due process and Practice Book § 43-10 (1), the

defendant was given the opportunity to contest the evidence on which the court relied for sentencing purposes. The defendant was given notice on the date he entered his guilty pleas that he was scheduled to be sentenced on March 6, 2012. The sentencing was continued three times, once because defense counsel was ill and twice more at the defendant's request. There is nothing in the record to suggest that the defendant was unaware that he would be sentenced on May 18, 2012.[5] On that date, neither the defendant nor his counsel informed the court that they were not prepared for sentencing. No continuance of sentencing was sought. The presentence investigation had been waived on the date the defendant entered his guilty pleas. No record was made of any further evidence that would be required or pertinent. The defendant did not dispute the validity of his two presentence arrests or the existence of probable cause justifying them when the court gave him and his counsel an opportunity to address the court. On appeal, the defendant does not point to any evidence with which he could dispute the court's finding that he was arrested twice before the sentencing hearing on May 18, 2012, and that at least one of those arrests was supported by probable cause.

We conclude, on the basis of our review of the defendant's *Garvin* agreement and the trial court's findings, that the defendant's two presentence arrests violated the conditions of the *Garvin* agreement and justified the enhanced sentence imposed by the court. Both the warrant and the prosecutor's statement of the operative facts underlying the postplea, presentence arrests were relevant and served as reliable indicators for sentencing purposes. The defendant and his counsel did not offer any evidence to counter either the warrant or the prosecutor's statement when the court afforded them an opportunity to address the court at the sentencing hearing. The court did not deny the defendant a meaningful opportunity for allocution or violate his due process right to contest the evidence on which the court relied for sentencing purposes. Accordingly, the court did not abuse its discretion in denying the defendant's motion to correct an illegal sentence.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Black's Law Dictionary defines allocution as "[a]n unsworn statement from a convicted defendant to the sentencing judge or jury in which the defendant can ask for mercy, explain his or her conduct, apologize for the crime, or say anything else in an effort to lessen the impending sentence." Black's Law Dictionary (7th Ed. 1999).

[2] A criminal defendant who enters a guilty plea under the *Alford* doctrine does not admit guilt but acknowledges that the state has sufficient evidence to convict. See *State* v. *Palmer*, 196 Conn. 157, 169 n.3, 491 A.2d 1075 (1985); see also *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970) (holding that "[a]n individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime").

[3] See *State* v. *Garvin*, 242 Conn. 296, 314, 699 A.2d 921 (1997).

[4] On appeal to the Supreme Court, Justice Norcott, in his concurring opinion, stated that "[t]he undeniable reality is that, like the defendant in the present case, many criminal defendants reside in disadvantaged urban environments and are not strangers to a heightened police presence. Thus, to take the Appellate Court's lightning analogy one step further, many defendants are released pursuant to *Garvin* agreements into situations that are akin to walking on an open field with a metal tipped umbrella in a thunderstorm." *State* v. *Stevens*, 278 Conn. 1, 21, 895 A.2d 771 (2006). Justice Norcott disagreed with the majority opinion in *Stevens* in that he would have "require[d] the state to prove by a preponderance of the evidence that the defendant subject to a 'no arrest' condition pursuant to a *Garvin* agreement engaged in criminal conduct that resulted in his arrest, rather than merely that the arrest was supported by probable cause." Id., 17–18. Our appellate courts have not yet been asked to consider a *Garvin* agreement where the later arrests triggering an enhanced sentence never result in a conviction because the defendant is found not guilty after a trial.

[5] Practice Book § 43-10 states in relevant part: "Before imposing a sentence . . . after the acceptance of a guilty plea . . . the judicial authority shall, upon the date previously determined for sentencing, conduct a sentencing hearing . . . ." In his motion before the trial court, the defendant argued that, in violation of § 43-10, his sentencing hearing took place without having been set down on a "date previously determined for sentencing." This argument is without merit. The sentencing hearing was originally scheduled for March 6, 2012, and then continued three times. On April 20, 2012, the court continued the sentencing for the third time and scheduled it for May 18, 2012. At that time, May 18, 2012, became the "date previously determined for sentencing." The court did not violate § 43-10 when it sentenced the defendant on May 18, 2012.