STATE OF CONNECTICUT *v.* CLAUDE ALEGRAND
(AC 31200)

DiPentima, C. J., and Bear and Flynn, Js.

Argued October 13, 2010—officially released August 9, 2011

*Diane Polan,* with whom were *Michael J. Wishnie* and *Ana Munoz,* law student intern, and, on the brief, *Daniel Habib,* law student intern, for the appellant (defendant).

*Michael L. Regan,* state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Claude Alegrand, appeals from the judgment of the trial court dismissing his motion for relief from judgment and sentence. On appeal, the defendant claims that the court erred in determining that it lacked subject matter jurisdiction to hear his motion for relief from judgment and sentence, a motion presented as an independent action in equity, or, in the alternative, as a petition for a writ of audita querela. As a third alternative, the defendant contends that even if we find that the court's jurisdictional holding was correct, we should nonetheless, despite that lack of jurisdiction, exercise our supervisory powers, pursuant to Practice Book § 60-2, to consider the merits of the defendant's constitutional claims. We conclude that the court properly determined that it lacked jurisdiction over the defendant's case and, therefore, dismissed his motion. We also deem it inappropriate to exercise our supervisory powers and, affirm the judgment of the trial court.

The following facts and procedural history are relevant to the defendant's appeal. On August 14, 2003, the defendant pleaded nolo contendere to robbery in the

third degree in violation of General Statutes § 53a-136.[1] After the court, *Clifford, J.*, accepted the plea, the defendant was found guilty, and the court sentenced him to serve five years imprisonment, execution suspended after two years, followed by a conditional discharge for two years. More than five years later, on November 25, 2008, after learning that he might be deported to Haiti as a result of this felony conviction, the defendant filed "a motion for relief from judgment and sentence." The motion sought to have the court, *Handy, J.*, grant his motion for relief from judgment and sentence, vacate his plea of nolo contendere and render judgment of acquittal, and dismiss with prejudice the criminal charges against him, or, alternatively, vacate the plea of nolo contendere and grant him an opportunity for a new trial. The defendant did not explain how the court would have authority or jurisdiction to dismiss the charges against him or render a judgment of acquittal. In support of his motion, the defendant asserted the following factual claims: (1) actual innocence by virtue of being at the wrong place at the wrong time when a drug dealer was robbed; (2) ineffectiveness of trial counsel who (a) advised him to enter a plea of nolo contendere when she knew witnesses for the state could not be located, (b) refused to try his case unless he paid her more money, (c) failed to advise him that he could move to withdraw his plea; (3) impairment of his faculties from prior drug use during his plea canvass; and (4) failure of the court, *Clifford, J.*, to establish that his plea was knowing, intelligent and voluntary after getting no response to a question during the plea canvass as to whether the defendant was then under the influence of alcohol or drugs.

---

[1] General Statutes § 53a-136 provides: "(a) A person is guilty of robbery in the third degree when he commits robbery as defined in section 53a-133.

"(b) Robbery in the third degree is a class D felony."

Before the trial court, *Handy, J.*, the defendant premised jurisdiction on two common-law vehicles: an independent action in equity and a writ of audita querela. On April 13, 2009, the court heard argument on the defendant's motion, and relying on our Supreme Court's decision in *State* v. *Lawrence*, 281 Conn. 147, 153, 913 A.2d 428 (2007), then determined that it lacked subject matter jurisdiction to hear the motion.

After deciding it had no jurisdiction as to the claim for general independent equitable relief, the court then, nonetheless, recognized that the Superior Court is a court of general jurisdiction and a court of equity but declined to exercise its equitable powers under the totality of the circumstances. The court did not find "[the defendant's] position to be different than other defendants that have appeared before [the] court who are not citizens of the United States of America" and, therefore, the circumstances did not rise to the level of its exercise as a court of equity.

As to the specific claim for relief under the writ of audita querela, the court reasoned that there is no criminal case, or constitutional or statutory provision in Connecticut, that establishes that the writ of audita querela is a procedure that could be utilized for the court to exercise its jurisdiction to set aside the judgment of conviction, open the judgment of conviction or vacate the defendant's nolo contendere plea. The court determined that it lacked jurisdiction to revisit a criminal conviction via these procedural mechanisms, and it dismissed the motion. This appeal followed.

We begin by setting forth our standard of review. Questions regarding subject matter jurisdiction purely are legal in nature and are subject to plenary review. *State* v. *Das*, 291 Conn. 356, 361, 968 A.2d 367 (2009). Every presumption favoring subject matter jurisdiction

should be indulged. *Conboy* v. *State*, 292 Conn. 642, 650, 974 A.2d 669 (2009).

I

The defendant first claims that the court erred in determining that it lacked jurisdiction to entertain an independent action in equity. The defendant argues that Connecticut courts have long heard independent actions brought as a means of obtaining relief from unfair judgments. In response, the state argues that the court properly determined that it lacked jurisdiction to vacate the defendant's conviction because there is no legislative or constitutional grant of continuing jurisdiction that would allow it. We agree with the state.

In this case, the court rendered an oral decision. In addressing the defendant's counsel, the court stated: "I'm not here to take evidence, counsel. I'm here to hear argument on whether or not this court feels that it has jurisdiction, and if I find it has jurisdiction, we may proceed to some other matters, but we need to get through the threshold issue."

The court went on to say that "the threshold issue with which this court is faced is one of jurisdiction, and it is this court's opinion, that without getting by the jurisdictional issue, we cannot get to the substantive issues that have been cited in the brief in [the defendant's] behalf." Quoting *State* v. *Lawrence*, supra, 281 Conn. 153, the court further stated: "It is well established that under the common law a trial court has the discretionary power to modify or vacate a criminal judgment before the sentence has been executed. This is so because the court loses jurisdiction over the case when the defendant is committed to the custody of the commissioner of correction and begins serving the sentence."[2] (Internal quotation marks omitted.)

---

[2] Although the court then seemed to discuss whether to exercise jurisdiction and stated that it has looked at the "totality of the circumstances" and found the defendant's position to be no different than that of other defen-

The defendant argues that the court erred in determining that it lacked jurisdiction to entertain an independent action in equity. On appeal, the defendant acknowledges that no Connecticut case addresses the propriety of collaterally challenging a criminal conviction via an independent action in equity. In support of his claim, the defendant relies only on holdings in Connecticut civil cases addressed to civil judgments and federal cases.

Citing federal cases, Justice Joseph Story and several cases from our Supreme Court,[3] the defendant claims that our laws should permit such independent equitable actions "[i]n all cases, where by accident, mistake, fraud or otherwise, a party has an unfair advantage in proceedings in a court of law, which must necessarily make that court an instrument of injustice, and it is, therefore, against conscience that he should use that advantage, a court of equity will interfere, and restrain him from using the advantage . . . ." (Internal quotation marks

dants, it is clear that both the state and the defendant understood, and have briefed the case on appeal, under the theory that the court found that it had no jurisdiction.

[3] *McConnell* v. *Beverly Enterprises-Connecticut, Inc.*, 209 Conn. 692, 697, 553 A.2d 596 (1989) (noting independent equitable actions properly brought before Superior Court because it is general court of equity jurisdiction); *Hoey* v. *Investors' Mortgage & Guaranty Co.*, 118 Conn. 226, 230, 171 A. 438 (1934) (equitable relief from civil judgment available when enforcing judgment is against conscience, there is no adequate remedy available at law and appellant had no opportunity to make a defense or was prevented from doing so by accident); *Folwell* v. *Howell*, 117 Conn. 565, 567, 169 A. 199 (1933) (permitting opening of judgment obtained through fraud or imposition of undue influence on testator); *Allis* v. *Hall*, 76 Conn. 322, 330, 56 A. 637 (1904) (listing fraud, mistake, surprise, and ignorance of defense as commonly recognized grounds for equitable interference); see also *United States* v. *Bonilla*, 637 F.3d 980, 985–86 (9th Cir. 2011) (finding that District Court committed abuse of discretion in denying defendant's motion to withdraw guilty plea when defendant's counsel failed to inform him of possible immigration consequences of his plea); *United States* v. *Richter*, 510 F.3d 103, 104 (2d Cir. 2007) (holding that writ of audita querela only lies when absence of any avenue of collateral attack would raise serious constitutional questions about laws limiting those avenues).

omitted.) *Folwell* v. *Howell*, 117 Conn. 565, 568–69, 169 A. 199 (1933); see 2 J. Story, Commentaries on Equity Jurisprudence (10th Ed. 1870) § 885.

Essentially, the defendant's claim is that his conviction is "unconscionable" and, therefore, an independent equitable action should lie to vacate his plea and set aside his conviction. The state disagrees on several grounds. First, it argues that there is no authority in Connecticut for an independent equitable action. Second, it cites *State* v. *Lawrence*, supra, 281 Conn. 154, for the proposition that "[w]ithout a legislative or constitutional grant of continuing jurisdiction . . . the trial court lacks jurisdiction to modify its judgment." Third, it argues, citing *State* v. *Mollo*, 63 Conn. App. 487, 492, 776 A.2d 1176, cert. denied, 257 Conn. 904, 777 A.2d 194 (2001), that the state has an interest in finality of judgments. We agree with the state.

In *Lawrence*, our Supreme Court summarized well established principles of law concerning jurisdiction. "Jurisdiction involves the power in a court to hear and determine the cause of action presented to it and its source is the constitutional and statutory provisions by which it is created. . . . Article fifth, § 1 of the Connecticut constitution proclaims that [t]he powers and jurisdiction of the courts shall be defined by law, and General Statutes § 51-164s provides that [t]he superior court shall be the sole court of original jurisdiction for all causes of action, except such actions over which the courts of probate have original jurisdiction, as provided by statute. . . . The Superior Court is a constitutional court of general jurisdiction. . . . In the absence of statutory or constitutional provisions, the limits of its jurisdiction are delineated by the common law. . . . It is well established that under the common law a trial court has the discretionary power to modify or vacate

a criminal judgment before the sentence has been executed. . . . This is so because the court loses jurisdiction over the case when the defendant is committed to the custody of the commissioner of correction and begins serving the sentence." (Citations omitted; internal quotation marks omitted.) *State* v. *Lawrence,* supra, 281 Conn. 153.

General Statutes § 52-1 provides in relevant part: "The Superior Court may administer legal and equitable rights and apply legal and equitable remedies in favor of either party in one and the same civil action so that legal and equitable rights of the parties may be enforced and protected in one action. . . ." By its terms, § 52-1 relates only to civil actions, not criminal cases. The Connecticut cases cited by the defendant to justify use of the court's equitable powers to vacate or stay enforcement of a judgment all relate to the staying of civil judgments.

We next address the applicability of the holding in *State* v. *Lawrence,* supra, 281 Conn. 147. In *Lawrence,* our Supreme Court decided the scope of Practice Book § 43-22.[4] In doing so, it was reviewing a case in which the defendant had filed in the trial court a motion to correct an illegal sentence pursuant to Practice Book § 43-22. In the motion, the defendant claimed that his conviction of manslaughter in the first degree with a firearm was improper. Id., 151. The defendant in *Lawrence* asserted that "because the jury had acquitted him of murder on the basis of the affirmative defense of extreme emotional disturbance, the proper conviction should have been of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (2). The maximum sentence for manslaughter in the first degree

---

[4] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

is twenty years incarceration; see General Statutes § 53a-35a (5); and, therefore, the defendant, in his motion, requested that the court refer the matter to the sentencing judge. The court, after considering the defendant's claims and the relief requested, dismissed the defendant's motion for lack of jurisdiction." (Internal quotation marks omitted.) *State* v. *Lawrence*, supra, 151.

"In his appeal to the Appellate Court from the judgment of dismissal, the [*Lawrence*] defendant claimed that he improperly had been convicted of manslaughter in the first degree with a firearm, and that, had he properly been convicted of manslaughter in the first degree, his sentence of imprisonment could not have exceeded twenty years," rather than the thirty-five years which had been imposed. Id., 151–52.

We agree with the defendant that Practice Book § 43-22 was not invoked in his motion in the case before us as it was in *Lawrence*. However, we think *Lawrence* has importance for our Supreme Court's holdings in that "[w]ithout a legislative or constitutional grant of continuing jurisdiction, however, the trial court lacks jurisdiction to modify its judgment" and that "jurisdiction of the sentencing court terminates once a defendant's sentence has begun and that a court may not take action affecting a defendant's sentence unless it expressly has been authorized to act." (Internal quotation marks omitted.) Id., 154.

The defendant also argues that he should be able to make a challenge to his conviction by invoking the court's general equity powers, distinct from the powers embodied in Practice Book § 43-22 to correct illegal sentences which were the subject of the *Lawrence* appeal. The defendant cites no constitutional or statutory authority, however, that grants authority to vacate a criminal plea, or set aside a judgment or conviction,

or open the judgment, or order a new trial, or enter a judgment of acquittal, under those general equitable powers in a criminal case. The defendant argues that the holding in *Lawrence* does not address any of the exceptions to the rule of finality besides Practice Book § 43-22. He further argues that the appropriate jurisdictional analysis, however, depends on the exception to the rule of finality the defendant asserts, which in turn is a reflection of the remedial vehicle the defendant chooses.

The defendant further argues that the recent case of *State* v. *Das*, supra, 291 Conn. 356, supports his position that the appropriate jurisdictional analysis depends on the remedial vehicle a defendant chooses to attack and vacate a plea and conviction. In *Das*, the defendant sought to vacate a judgment of conviction and withdraw his plea of nolo contendere pursuant to (1) Practice Book § 39-26, (2) a writ of error coram nobis[5] and, finally, (3) a motion to modify the conditions of his probation. Id., 358. The *Das* court concluded that the trial court was without jurisdiction to act on the motion to withdraw the nolo contendere plea. It concluded that to the extent that prior Supreme Court and Appellate Court cases suggest that there exists in our jurisprudence a constitutional violation exception to the trial court's lack of jurisdiction over a defendant's motion to withdraw his plea after the sentence has been executed, those cases were overruled. Id., 368.

The *Das* court also decided that "to the extent that the defendant grounds his claim on the allegation that

---

[5] "A writ of error coram nobis is an ancient common-law remedy which authorized the trial judge, within three years, to vacate the judgment of the same court if the party aggrieved by the judgment could present facts, not ' appearing in the record, which, if true, would show that such judgment was void or voidable. . . . The facts must be unknown at the time of the trial without fault of the party seeking relief." (Citation omitted; internal quotation marks omitted.) *State* v. *Das*, supra, 291 Conn. 370.

the conditions imposed were not in accord with his understanding of his plea, it is precluded by the same jurisdictional bar . . . ." Id., 372. The *Das* court then turned to the prayer for relief for a writ of coram nobis. The defendant points out that relief was denied by the *Das* court, not for lack of jurisdiction, but because "coram nobis lies only in the unusual situation [where] no adequate remedy is provided by law. . . . Moreover, when habeas corpus affords a proper and complete remedy the writ of error coram nobis will not lie." (Internal quotation marks omitted.) Id., 371. Because the *Das* court found that the defendant had not yet availed himself of the petition for a writ of habeas corpus, the court decided that the writ of error coram nobis properly had been denied. Id., 372.

We disagree that *Das* opened the door to exercise of the court's equitable powers where the defendant's sentence has been served. As the state and the defendant on appeal agree, there is no Connecticut authority authorizing an equitable remedy of the scope the defendant seeks. Second, there is no statutory authority authorizing the equitable remedy the defendant seeks where the right of appeal was not exercised, no timely motion to withdraw or to vacate the plea was filed, and no petition for a new trial had been timely made, nor had any pardon been sought.

Finally, in its third reason for opposing the defendant's attempt to use an independent action in equity to open his judgment of conviction, the state points out the public interest in finality of judgments. The state notes that the defendant failed to avail himself of existing remedies to challenge his conviction. Prior to his sentencing, the defendant never indicated a desire to vacate his plea. The defendant admitted that he failed to file a direct appeal. There is no evidence in the record that he filed a petition for a new trial pursuant to Practice Book § 42-55 and General Statutes § 52-270; or that

he applied for a pardon pursuant to General Statutes § 54-130a; or that he petitioned for a writ of habeas corpus pursuant to General Statutes § 52-466 or that he timely filed a writ of error coram nobis. We note that he did not act within three years after his plea to vacate it pursuant to General Statutes § 54-1j (c) because he claimed that the court did not advise him properly of one of the enumerated immigration consequences.

We too "must recognize society's interest in the finality of [criminal] judgments . . . and [accept] the concept of inspiring confidence in the integrity of our procedures." (Citation omitted.) *State* v. *Mollo,* supra, 63 Conn. App. 492. In reviewing attacks on judgments, our Supreme Court has looked not only "to the petitioner's claim, but also with regard to the effect of the issuance of the writ on the strong interest in the finality of judgments . . . and the other interests embodied in the statute of limitations." (Citation omitted.) *Summerville* v. *Warden,* 229 Conn. 397, 428, 641 A.2d 1356 (1994).

The General Assembly, in enacting § 54-1j (a) and (c), provided protection for immigrants to the United States who plead guilty or nolo contendere to criminal charges, but that statutory protection incorporated true limits. Subsection (a) of § 54-1j provides that "[t]he court shall not accept a plea of guilty or nolo contendere from any defendant in any criminal proceeding unless the court first addresses the defendant personally and determines that the defendant fully understands that if the defendant is not a citizen of the United States, conviction of the offense for which the defendant has been charged may have the consequences of deportation or removal from the United States, exclusion from readmission to the United States, or denial of naturalization, pursuant to the laws of the United States. If the defendant has not discussed these possible consequences with the defendant's attorney, the court shall

permit the defendant to do so prior to accepting the defendant's plea." However, recognizing the need to have some finality to criminal judgments, the legislature further provided that a defendant may withdraw his plea not later than three years after making it. Specifically, subsection (c) of § 54-1j provides as to these same immigration consequences that "[i]f the court fails to address the defendant personally and determine that the defendant fully understands the possible consequences of the defendant's plea, as required in subsection (a) of this section, and the defendant not later than three years after the acceptance of the plea shows that the defendant's plea and conviction may have one of the enumerated consequences, the court, on the defendant's motion, shall vacate the judgment, and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty."

There is a public interest in maintaining some finality to judgments. Prosecutions cannot easily be recommenced when arresting officers no longer are available, witnesses are dead or cannot be found and physical evidence of crime has been destroyed. Public trust and confidence in the judiciary is sapped when cases are allowed to linger endlessly for years or decades in trial or appellate tribunals.

We conclude that the absence of explicit Connecticut precedent, or constitutional or statutory provision authorizing an independent equitable action as a vehicle for challenging a criminal conviction after the sentence has been completed, and the passage of five years since the plea was accepted, provided a sufficient basis for the court to conclude that it lacked jurisdiction.[6]

---

[6] The defendant also argues that the court should have taken evidence on the equities before making a decision that it would not exercise its equitable powers. We disagree. Once the court determined it had no jurisdiction, it should have gone no further. "If the [defendant's] claim is not within one of these categories [of claims that, under the common law, the court has jurisdiction to review], then the court must dismiss the claim for a lack of jurisdiction and not consider its merits." (Internal quotation marks

## II

The defendant next claims that the court erred in determining that it lacked subject matter jurisdiction to entertain a writ of audita querela[7] as a vehicle to vacate his conviction. We disagree.

The history of the writ of audita querela in Connecticut reveals its limited applicability to civil judgments. "The writ of audita querela provides relief from a judgment at law because of events occurring subsequently which should cause discharge of a judgment debtor." (Internal quotation marks omitted.) *Ames* v. *Sears, Roebuck & Co.*, 206 Conn. 16, 21, 536 A.2d 563 (1988). "The ancient writ of audita querela has been defined as a writ issued to afford a remedy to a defendant against whom judgment had been rendered, but who had new matter in defense (e.g., a release) arising, or at least raisable for the first time, after judgment. . . . Because the writ impairs the finality of judgments, the common law precluded its use in cases in which the judgment debtor sought to rely on a defense such as payment or

omitted.) *State* v. *Casiano*, 122 Conn. App. 61, 67, 998 A.2d 792, cert. denied, 298 Conn. 931, 5 A.3d 491 (2010).

[7] "An audita querela, is where a defendant against whom judgment is recovered, and who is therefore in danger of execution, or is perhaps in execution, may be relieved upon good matter of discharge, which has happened *since the judgment*: as if the plaintiff has given him a general release, or if the defendant has paid the debt to the plaintiff, without procuring satisfaction to be entered of record, or to be endorsed on the execution: in these and like cases, when the defendant has good matter to plead, and has had no opportunity, an audita querela lies in the nature of a bill of equity, to be relieved against the oppression of the plaintiff." (Emphasis added.) 1 Swift, Digest of the Laws of the State of Connecticut (1822) p. 789.

"Audita querela is a remedy granted in favor of one against whom execution has issued on a judgment, the enforcement of which would be contrary to justice because of (1) matters arising subsequent to its rendition, or (2) prior existing defenses that were not available to the judgment debtor in the original action, or (3) the judgment creditor's fraudulent conduct or circumstances over which the judgment debtor had no control. Ballentine's Law Dictionary (3d Ed. 1969)." *Oakland Heights Mobile Park, Inc.* v. *Simon*, 40 Conn. App. 30, 32, 668 A.2d 737 (1995).

a release that he had the opportunity to raise before the entry of judgment against him. . . . No authority has been cited to suggest that the writ of audita querela was ever available to present issues which were presented before the entry of the judgment attacked by the writ. . . . The writ of audita querela provides relief from a judgment at law because of *events occurring subsequently* which should cause discharge of a judgment debtor." (Emphasis added; internal quotation marks omitted.) *Anthony Julian Railroad Construction Co.* v. *Mary Ellen Drive Associates,* 50 Conn. App. 289, 294, 717 A.2d 294 (1998).

The defendant also claims that the court's decision must be revisited in light of the United States Supreme Court's decision in *Padilla* v. *Kentucky,* 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). We disagree.

*Padilla* was decided by the United States Supreme Court on March 31, 2010, and held that the sixth amendment right to competent counsel was implicated where a noncitizen defendant was not advised by his counsel prior to making his guilty plea that deportation virtually was mandatory. The trial court, when rendering its oral decision that it lacked jurisdiction to hear the defendant's claim on April 13, 2009, had no knowledge of *Padilla* because it had not yet been decided. On appeal, the defendant argues, however, that *Padilla* is relevant to this appeal.

In *Padilla,* the defendant had pleaded guilty to a drug offense after his attorney erroneously told him that he could not be removed from the United States as a result of his plea because of the length of time that he had been a lawful permanent resident. Id., 359. The defense counsel in *Padilla* advised that because the defendant had been in the country so long, he "did not have to worry about immigration status . . . ." (Internal quotation marks omitted.) Id. The Supreme

Court of Kentucky rejected the defendant's claim of ineffective assistance of counsel on the ground that immigration consequences of criminal convictions are merely " 'collateral'," and, therefore, he had no right to adequate advice about such consequences. Id., 359–60. The issue before the United States Supreme Court was "whether, as a matter of federal law, Padilla's counsel had an obligation to advise him that the offense to which he was pleading guilty would result in his removal from this country." Id., 360. The court answered this question in the affirmative, holding that the sixth amendment to the United States constitution requires that "counsel must inform [his or] her client whether [the client's] plea carries a risk of deportation." Id., 374.

Nothing in the holding of *Padilla* confers jurisdiction on a state trial court to entertain late motions to open judgments postsentencing or to entertain late motions for relief from judgment. The court merely defined the scope of a substantive constitutional right—the right to effective assistance of counsel.

*Padilla* is the progeny of *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), which established the test for review of claims of ineffective assistance of counsel. A claim of ineffective assistance of counsel does not provide a statutory or constitutional basis for the court's jurisdiction to vacate a plea or a conviction. However, it does provide grounds for a habeas corpus petition pursuant to Practice Book § 23-21 et. seq.

We conclude that the court properly determined that it lacked jurisdiction. Audita querela is a specific equitable remedy that enables a court of equity to supervise its judgments and to control the issuance of executions. *Anthony Julian Railroad Construction Co.* v. *Mary Ellen Drive Associates*, supra, 50 Conn. App. 295. It is in the nature of an equitable injunction addressed to a

judgment. There is dicta from our Supreme Court labeling audita querela as a legal remedy,[8] but when we consult with Joseph Story's Commentaries on Equity Jurisprudence, it is clear that an audita querela is a bill quia timet and, as such, its use is on an execution before any civil judgment, as a party "seeks the aid of a Court of Equity because he fears (quia timet) some future probable injury to his rights or interests, and not because an injury has already occurred which requires any compensation or other relief." 2 J. Story, Commentaries on Equity Jurisprudence (10th Ed. 1870) § 826. "[The writ is] ordinarily applied to prevent wrongs or anticipated mischiefs, and not merely to redress them when done." Id. There is no Connecticut precedent to authorize the civil writ of audita querela in the criminal context, and we decline to authorize it for the first time here. The defendant seeks an almost limitless means of collateral attack that would cause undue burden on the prosecutorial process. The state's concern about opening wide a burdensome door is not an unreasonable one. If audita querela is made available to noncitizens with respect to criminal judgments, it ought to be equally as available to citizens who suffer some consequence as a result of a prior felony conviction. Such consequences might include denial of an opportunity to serve in the military, denial of security clearances, denial of an opportunity to serve on the state police force, denial of promotions, denial of regular nongovernmental employment, denial of voting rights and potential enhanced penalty by virtue of commission of a later crime.[9] A convicted felon also is subject to

---

[8] In *Lashgari* v. *Lashgari*, 197 Conn. 189, 201 n.7, 496 A.2d 491 (1985), our Supreme Court stated that "[t]he ancient writ of [audita querela] is, as the plaintiff states, one of legal rather than equitable origin." In so saying, however, the Supreme Court cites to *Russell Lumber Co.* v. *J. E. Smith & Co.*, 82 Conn. 517, 74 A. 949 (1909), which does not appear to take such a position.

[9] See General Statutes § 53a-40 (b) (persistent dangerous sexual offender); § 53a-40 (c) (persistent serious felony offender); § 53a-40 (d) (persistent

impeachment through the use of his felony conviction in other trial testimony.[10] Whether used in such situations by a noncitizen or a citizen, there would be little finality to any criminal conviction.

We recognize that there is a split of authority in the federal courts as to how audita querela might be used;[11] however, we must look to the source of our own jurisdiction as a court system established under the Connecticut constitution and Connecticut statutes. The writ of audita querela remains nothing more than a more specific form of equitable relief and remains a remedy for civil judgments. If the defendant were actually in custody, he might have had the right to apply for habeas relief under § 52-466. The defendant, however, was still free to consult with his attorneys within the three year period to seek relief via coram nobis, but he failed to do so. See, e.g., *State* v. *Das*, supra, 291 Conn. 370. An unlimited encroachment on the finality of judgments without regard to time of conviction would not properly serve the public interest in finality of judgments.

serious sexual offender); § 53a-40 (e) (persistent larceny offender); § 53a-40 (f) (persistent felony offender).

[10] General Statutes § 52-145 (a) provides in relevant part: "A person shall not be disqualified as a witness in any action because of . . . (3) his conviction of crime." See *State* v. *Askew*, 245 Conn. 351, 716 A.2d 36 (1998) (state allowed to impeach credibility of defendant with prior felony conviction).

[11] See *United States* v. *Gamboa*, 608 F.3d 492 (9th Cir.) (denying petition for writ of audita querela when requested relief can be obtained under motion pursuant to 28 U.S.C. § 2255), cert. denied, 562 U.S. 1096, 131 S. Ct. 809, 178 L. Ed. 2d 540 (2010); *United States* v. *Holt*, 417 F.3d 1172, 1173 (11th Cir. 2005) (same); *United States* v. *Torres*, 282 F.3d 1241, 1245 (10th Cir. 2002) (same); *United States* v. *Banda*, 1 F.3d 354, 356 (5th Cir. 1993) (same); *United States* v. *Reyes*, 945 F.2d 862, 866 (5th Cir. 1991) (finding that audita querela not available to vacate conviction on general equitable grounds); *United States* v. *Ayala*, 894 F.2d 425, 426 (D.C. Cir. 1990) (permitting writ of audita querela as basis for vacating criminal conviction only when defendant able to raise legal objection not cognizable under existing scheme of federal postconviction remedies); *United States* v. *Kimberlin*, 675 F.2d 866, 869 (7th Cir.) (denying availability of audita querela when defendant fails to file § 2255 motion properly), cert. denied, 456 U.S. 964, 102 S. Ct. 2044, 72 L. Ed. 2d 489 (1982).

For the same reasons that we concluded that there was no jurisdiction for the defendant's invocation of general equitable powers after the sentence was completed and five years had passed since the plea was accepted, we conclude that there was no jurisdiction to hear this specific writ, which is an equitable remedy.

### III

The defendant also asks this court to exercise its supervisory powers to consider the merits of his constitutional claims. Citing *State* v. *Reid*, 277 Conn. 764, 778, 894 A.2d 963 (2006) (holding that Supreme Court retains jurisdiction to review convictions through its supervisory powers even when trial court's jurisdiction terminates), he claims that our Supreme Court has held that, even if the lower trial court lacked jurisdiction, "an appellate court always has the power to correct unconstitutional errors in an underlying judgment." Citing Practice Book § 60-2, the defendant cites as further authority, provisions of that rule that provide that an appellate court "may, on its own motion or the motion of any party, modify or vacate any order made by the trial court, or a judge thereof, in relation to the prosecution of the appeal." (Internal quotation marks omitted.) However, we conclude that the judiciary cannot by adopting its own rule create its own jurisdiction.[12] The defendant further claims that his case mirrors the " 'rare circumstances' " our Supreme Court used to justify its review in *Reid*, a case that also involved immigration consequences. See *State* v. *Reid*, supra, 778.

[12] General Statutes § 51-14 (a) authorizes the judges of the Superior Court to promulgate rules regulating pleading, practice and procedure in judicial proceedings and states that "[s]uch rules shall not abridge, enlarge or modify any substantive right or the jurisdiction of any of the courts. . . ." It is well established that "the judiciary cannot confer jurisdiction on itself through its own rule-making power . . . ." (Internal quotation marks omitted.) *State* v. *Casiano*, 122 Conn. App. 61, 67, 998 A.2d 792, cert. denied, 298 Conn. 931, 5 A.3d 491 (2010).

In the present case, it is worth noting, as the state's brief points out, that the trial judge gave warning that there may be immigration consequences.

On the record before us, we conclude that the trial court had no jurisdiction to hear the defendant's claims. Although using supervisory powers, our Supreme Court in *Reid* chose to treat a motion to vacate as a motion to extend the time for appeal on an eleven year old conviction and then found no jurisdiction and affirmed the judgment of conviction, the defendant has not convinced us that this is that rare case that warrants appellate review under our supervisory powers. Id.

The judgment is affirmed.

In this opinion the other judges concurred.