******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# NO. 2 FRASER PLACE CONDOMINIUM ASSOCIATION, INC. *v.* SHARON MATHIS ET AL.
## (AC 46406)

Alvord, Seeley and Westbrook, Js.

### *Syllabus*

The plaintiff condominium unit owners' association sought to foreclose a statutory lien on a certain unit owned by the defendant S and occupied by the defendant M for unpaid monthly common expense assessments and late charges. The court rendered a judgment of strict foreclosure in 2013, and the law days passed without redemption. The plaintiff never took possession of the unit. The plaintiff had applied for orders of execution of ejectment, several of which were granted; however, the ejectment never took place. In 2023, S filed an application for a writ of audita querela, arguing that the latest in a series of ejectment orders should be enjoined because, after the judgment of strict foreclosure had been rendered but prior to the passing of the law days, she purportedly had reached an agreement with the plaintiff to pay off the judgment amount, had performed in accordance with that agreement and, thus, redeemed her ownership interest in the property. At the hearing on the application, M testified that she had made a partial payment to the plaintiff in an amount that was less than the full amount needed to redeem the property. The court excluded certain evidence that the defendants' counsel sought to introduce, including a letter written by an attorney for S Co., a mortgage servicer, regarding the status of a mortgage on the property, as well as a lis pendens noticing a subsequent foreclosure action against the defendants. The court denied the application for a writ of audita querela, concluding that the defendants failed to prove that the issuance of the writ was warranted because the evidence did not establish that the defendants had tendered the full amount due to redeem the property prior to the passage of the law days and title vesting in the plaintiff. *Held*:

1. The trial court did not abuse its discretion in denying the defendants' application for a writ of audita querela: the defendants presented no evidence, either with the application or at the evidentiary hearing, from which the court reasonably could have found that the parties entered into a postjudgment agreement under which the defendants could have redeemed the property without tendering the full amount of the outstanding debt; moreover, although M testified that she had made a partial payment, she never testified that there was an agreement for the plaintiff to accept less than the full amount of the judgment rendered, and, M's testimony that she made a second payment that she understood as constituting payment in full, was unsupported by any evidence of that

payment; furthermore, the trial court, in deciding whether to grant the equitable relief sought, was free to consider the fact that the defendants had never previously raised the argument that they had redeemed the property, despite numerous court filings over the course of one decade, during which time the defendants sought to evade ejectment, and the court, as the trier of fact, was free to reject M's unsupported testimony that there was an agreement to redeem the property.

2. This court declined to review the defendants' unpreserved claim that the trial court improperly failed to conclude that the granting of the application for a writ of audita querela was necessary to avoid an inequitable windfall to the plaintiff; the defendants never distinctly raised their windfall argument to the trial court, the court did not discuss that issue in its decision denying the application for a writ of audita querela, and the defendants' suggestions in their reply brief to this court that they "essentially" had presented a windfall argument or that the trial court should have gleaned from the closing argument of the defendants' counsel that they were advancing such a claim were unavailing.

3. The trial court properly declined to admit into evidence certain exhibits offered by the defendants' counsel at the hearing on the application for a writ of audita querela: although the defendants argue that the statements in the letter authored by S Co.'s attorney fell within the hearsay exception for a statement by a party opponent, the trial court correctly concluded that this evidence constituted inadmissible hearsay because the letter did not include statements of the plaintiff or any other party to the action but, rather, contained statements of an attorney for a nonparty mortgage servicer; moreover, the trial court properly declined to admit into evidence the lis pendens purporting to give notice of a subsequent foreclosure action against the defendants because that document was not properly certified and, therefore, was not self-authenticating, as the lis pendens did not contain, pursuant to the applicable statute (§ 7-23), a town seal demonstrating that it was a certified copy; furthermore, even if the lis pendens were improperly excluded from evidence in error, the defendants failed to demonstrate that this exclusion was harmful because it was merely cumulative of other properly admitted evidence.

Argued January 30—officially released May 21, 2024

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the named defendant, brought to the Superior Court in the judicial district of Hartford, where the defendants were defaulted; thereafter, the court, *Wahla, J.*, granted the plaintiff's motion for a judgment of strict foreclosure and rendered judgment thereon;

subsequently, the court, *Baio, J.*, denied the defendants'
application for a writ of audita querela, and the named
defendant et al. appealed to this court. *Affirmed.*

*Thomas P. Willcutts*, for the appellants (named
defendant et al.).

*Houston Putnam Lowry*, with whom were *Nicole K.
Zatserkovniy*, and, on the brief, *Elizabeth M. Cristo-
faro*, for the appellee (plaintiff).

*Opinion*

WESTBROOK, J. More than ten years ago, the plain-
tiff, No. 2 Fraser Place Condominium Association, Inc.,
a unit owners' association of a common interest com-
munity, brought the underlying action to foreclose a
statutory lien for unpaid monthly common expense
assessments and late charges in accordance with Gen-
eral Statutes § 47-258[1] regarding a condominium unit
(unit) owned by the defendant Sharon Mathis and occu-
pied by her daughter, the defendant Shalonda Mathis.[2]
The court rendered a judgment of strict foreclosure on
September 23, 2013, and set law days to commence
on November 18, 2013. The law days passed without

---

[1] General Statutes § 47-258 provides in relevant part: "(a) The association
has a statutory lien on a unit for any assessment attributable to that unit
or fines imposed against its unit owner. . . .

* * *

"(j) The association's lien may be foreclosed in like manner as a mortgage
on real property. . . ."

[2] The complaint also named Mortgage Electronic Registration Systems,
Inc. (MERS), as an additional defendant by virtue of its interest in a mortgage
on the property. MERS was defaulted for failure to appear and is not a
participant in the present appeal. The plaintiff also named itself as a defen-
dant, alleging that it may claim a subsequent priority interest in the property
on the basis of additional assessments that arise during the pendency of
this action. The defendant No. 2 Fraser Place Condominium Association,
Inc., was also defaulted for failure to appear.

Accordingly, all references in this opinion to the defendants collectively
are to Sharon Mathis and Shalonda Mathis only. We refer to the defendants
individually by name when necessary.

redemption but, to date, the plaintiff has not taken possession of the unit.

The defendants now appeal from the judgment of the court denying an application for a writ of audita querela (application) filed by Sharon Mathis, in which she argues that the latest in a series of ejectment orders obtained by the plaintiff should be enjoined on the ground that, prior to the passing of the law days in 2013, she purportedly had reached an agreement with the plaintiff to pay off the judgment amount, performed in accordance with that agreement, and, thus, effectively redeemed her ownership interest such that title to her unit never passed to the plaintiff by operation of law following the passage of the law days. The defendants claim that the court improperly (1) concluded that the evidence presented in support of the application did not support a finding that the parties had reached and performed on any agreement to satisfy the debt and redeem the property, (2) failed to conclude that the granting of the application was necessary to avoid an inequitable windfall to the plaintiff, and (3) declined to admit into evidence certain exhibits offered by the defendants' counsel at the hearing on the application. We disagree and, accordingly, affirm the judgment of the trial court.[3]

---

[3] The plaintiff argues that any claim by the defendants that the parties had reached a settlement agreement pursuant to which the plaintiff would accept less than the full amount of the debt owed must be rejected because no such agreement was reached and, alternatively, because any such agreement was not in writing and, thus, would have violated the statute of frauds as set forth in General Statutes § 52-550. Section 52-550 (a) provides in relevant part: "No civil action may be maintained in the following cases unless the agreement, or a memorandum of the agreement, is made in writing and signed by the party, or the agent of the party, to be charged . . . (4) upon any agreement for the sale of real property or any interest in or concerning real property . . . ." Because we affirm the trial court's determination that the plaintiff failed to establish that *any* postjudgment settlement agreement existed between the parties, we need not reach the statute of frauds issue.

The record reveals the following facts and procedural history. In July, 2012, the plaintiff commenced the underlying foreclosure action. Sharon Mathis was defaulted for failure to appear, and Shalonda Mathis was defaulted for failure to plead, and the court rendered a judgment of strict foreclosure in favor of the plaintiff on September 23, 2013. The court found that the amount of the debt owed as of the judgment date was $6874.85, and it set law days to commence on November 18, 2013.[4] No appeal was taken from the judgment of strict foreclosure.

On or about November 15, 2013, Shalonda Mathis made a payment of $5800 to the plaintiff, which was less than the full amount needed to redeem the property. See, e.g., *Louisville Joint Stock Land Bank* v. *Radford*, 295 U.S. 555, 579 n.7, 55 S. Ct. 854, 79 L. Ed. 1593 (1935) (it is axiomatic that holder of equity of redemption can redeem from mortgagee or lien holder only by paying outstanding debt in full); *Lomas & Nettleton Co.* v. *Di Francesco*, 116 Conn. 253, 258, 164 A. 495 (1933) (same). Although Shalonda Mathis made an inquiry as to the remaining amount needed to satisfy the judgment in full, she failed to make any further payments before the law days passed. Because the law days passed without any redemption of the property, all rights of redemption were extinguished and title to the unit vested absolutely in the plaintiff. See *Sovereign Bank* v. *Licata*, 178 Conn. App. 82, 97, 172 A.3d 1263 (2017) ("[if] a foreclosure decree has become absolute by the passing of the law days, the outstanding rights of redemption have been cut off and the title has become unconditional in the plaintiff, with a consequent and

---

[4] The court found that the fair market value of the property was $69,000, and awarded attorney's fees of $1890, a title search fee of $225, and an appraisal fee of $375. Accordingly, the debt and fees totaled $9364.85. At the time the judgment of strict foreclosure was rendered, the property was also encumbered by a $57,000 mortgage in favor of MERS.

accompanying right to possession" (internal quotation marks omitted)).

The plaintiff applied for an order of execution of ejectment, which was granted and issued on March 27, 2014. The ejectment, however, did not take place. The plaintiff filed another application for execution of ejectment on April 7, 2017, which was granted and issued on April 21, 2017. Once again, the ejectment did not occur.[5] Several years later, on July 29, 2020, the plaintiff applied for a third execution of ejectment, which was granted and issued on January 19, 2021. The defendants were served with notice of the January 19, 2021 execution of ejectment, which indicated that they had until February 16, 2021, to quit possession. On February 8, 2021, Shalonda Mathis filed a motion to open the foreclosure judgment and a motion for a stay of the ejectment asking for an "additional time of . . . [twenty] weeks before moving out." The court, *M. Taylor, J.*, denied the motion to open but granted the motion to stay the ejectment until May 3, 2021.[6]

The plaintiff filed another application for an order of execution of ejectment on May 25, 2021, which was granted and issued the same day. On June 16, 2021, Shalonda Mathis filed a motion seeking to stay the ejectment for ten or more additional weeks. The court,

___

[5] A party seeking to enforce an order of ejectment has only sixty days from the date it is issued to make service and due return to the court, otherwise the order expires and a new application for execution of ejectment must be filed with the court. See Form JD-CV-30, titled "Application and Execution for Ejectment Mortgage Foreclosure," available at https://jud.ct.gov/webforms/forms/cv030.pdf (last visited May 13, 2024) (directing officer to make service and due return to court within sixty days from date ejectment order issues).

[6] At the hearing on the motion to open, counsel for the plaintiff provided the following explanation for why, despite numerous previous execution of ejectment orders, the defendants remained in possession of the unit: "My understanding is at each time . . . those executions were issued . . . the defendant sought additional time in which to move out of the premises and, so these executions were never acted upon."

*Budzik, J.*, denied the motion and set a new ejectment date of July 13, 2021.

On July 15, 2021, the plaintiff filed a motion for sanctions seeking to preclude the defendants from filing further motions for stays of ejectment. On July 16, 2021, Shalonda Mathis filed her third motion for a stay of ejectment, seeking to stay the ejectment for an additional four weeks. The court, *M. Taylor, J.*, issued the following order: "The plaintiff may reclaim its proposed ejectment after thirty days from the court's order, issued on [July 19, 2021]. Should another stay be requested, the question of an agreement with the plaintiff may be raised only if both parties agree that the matter ought to be stayed. If there are other reasons for a stay presented, the court will hear them."

On January 25, 2022, Shalonda Mathis filed her fourth motion for a stay of execution, seeking an eight week extension. The plaintiff objected to the motion, which was taken on the papers on February 14, 2022. The court never ruled on that motion, and the ejectment date passed without action.

On May 10, 2022, the plaintiff filed another application for an execution of ejectment. On August 2, 2022, having received no response from the court, the plaintiff filed a caseflow request seeking an adjudication. The clerk responded: "The clerk cannot act on this proposed execution of ejectment because a motion for stay and objection remain pending on the docket. There is no information in the court record indicating the duration of any agreed upon stay or if it has ended." On September 12, 2022, the court ordered the clerk to issue the execution of ejectment.

The execution of ejectment was issued on October 18, 2022. The ejectment date was set for November 9, 2022, at 7:30 a.m. On that day, Sharon Mathis filed a bankruptcy petition pursuant to chapter 13 of the

United States Bankruptcy Code, which halted the ejectment. The bankruptcy action was dismissed on November 18, 2022, following which the plaintiff obtained a new ejectment date of December 14, 2022, at 7:30 a.m. Prior to that date, Sharon Mathis filed a second chapter 13 bankruptcy petition. The plaintiff obtained relief from the automatic stay provision on January 24, 2023, and, thereafter, Sharon Mathis filed a motion for voluntary dismissal of the bankruptcy action, and that action was also dismissed.

Because more than sixty days had passed since the issuance of the most recent order of execution of ejectment, the plaintiff immediately filed an application for a new order of execution of ejectment. The defendants filed their fifth motion for a stay of ejectment on January 25, 2023, indicating their intent to file an application for a writ of audita querela—the subject of the present appeal—which they filed on January 27, 2023. The plaintiff opposed the application, arguing that such a writ should be barred by the equitable doctrines of laches and/or res judicata.

On March 31, 2023, the court, *Baio, J.*, denied the defendants' application. The court concluded that the defendants failed to prove, on the basis of the evidence presented, that the issuance of the writ was warranted. The court explained that the evidence provided did not establish "that the defendant tendered the full amount due to redeem the property prior to the law day and title vesting with the plaintiff." The defendants thereafter filed the present appeal.

On June 28, 2023, the defendants filed a motion asking the court to articulate "whether or not it found that the evidence before it established the defendants' claim that an agreement was reached between the plaintiff and the defendants as to the defendants redeeming/satisfying the court's judgment of strict foreclosure

. . . including whether the court found that the defendants performed on the agreement, as they claim."

The court issued a brief order in response to the motion for articulation on July 31, 2023, stating in relevant part: "The evidence presented failed to support the position of the defendants. Specifically, the evidence presented did not support a finding of *any* valid agreement between the parties, let alone one that would not require full repayment prior to the law day."[7] (Emphasis added.) Additional facts and procedural history will be set forth as necessary.

I

The defendants first claim that the court improperly denied the application for a writ of audita querela on the basis of its conclusion that the evidence presented in support of the application did not support a finding that the parties had reached a postjudgment agreement regarding the debt. We are not persuaded.

Our consideration of the defendants' claim is guided by the following principles of law and standard of review. "Audita querela is a remedy granted in favor of one against whom execution has issued on a judgment, the enforcement of which would be contrary to justice because of (1) matters arising subsequent to its rendition, (2) prior existing defenses that were not available to the judgment debtor in the original action, or (3) the judgment creditor's fraudulent conduct or circumstances over which the judgment debtor had no control." *Oakland Heights Mobile Park*, *Inc.* v. *Simon*, 40 Conn. App. 30, 32, 668 A.2d 737 (1995). "Because the writ impairs the finality of judgments, the common law precluded its use in cases in which the judgment debtor

---

[7] On August 1, 2023, the trial court denied the plaintiff's motion to terminate the appellate stay but conditioned the continuance of the stay on the defendants' making monthly payments of $250 to the plaintiff during the pendency of the appeal.

sought to rely on a defense such as payment or a release that he had the opportunity to raise before the entry of judgment against him. . . . The writ of audita querela provides relief from a judgment at law because of events occurring subsequently [that] should cause discharge of a judgment debtor." (Emphasis omitted; internal quotation marks omitted.) *Commission on Human Rights & Opportunities ex rel. Cortes* v. *Valentin*, 213 Conn. App. 635, 658–59, 278 A.3d 607, cert. denied, 345 Conn. 962, 285 A.3d 389 (2022).

"Audita querela is a specific equitable remedy that enables a court of equity to supervise its judgments and to control the issuance of executions. . . . It is in the nature of an equitable injunction addressed to a judgment." (Citation omitted.) *State* v. *Alegrand*, 130 Conn. App. 652, 668–69, 23 A.3d 1250 (2011). "Equitable relief is extraordinary and not available as a matter of right, but rather it is within the discretion of the court." (Internal quotation marks omitted.) *Commission on Human Rights & Opportunities ex rel. Cortes* v. *Valentin*, supra, 213 Conn. App. 659. We will review a court's equitable determinations, therefore, only for an abuse of discretion. See *Riley* v. *Travelers Home & Marine Ins. Co.*, 173 Conn. App. 422, 460–61, 163 A.3d 1246 (2017), aff'd, 333 Conn. 60, 214 A.3d 345 (2019); see also *Thompson* v. *Orcutt*, 70 Conn. App. 427, 431, 800 A.2d 530 ("[T]he exercise of . . . equitable authority . . . is subject only to limited review on appeal. . . . The only issue on appeal is whether the trial court has acted unreasonably and in clear abuse of its discretion." (Internal quotation marks omitted.)), cert. denied, 261 Conn. 917, 806 A.2d 1058 (2002).

"Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *Riley* v. *Travelers Home & Marine Ins.*

*Co.*, supra, 173 Conn. App. 461. "Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . The salient inquiry is whether the court could have reasonably concluded as it did. . . . In determining whether there has been an abuse of discretion, much depends upon the circumstances of each case." (Internal quotation marks omitted.) *307 White Street Realty, LLC* v. *Beaver Brook Group, LLC*, 216 Conn. App. 750, 770, 286 A.3d 467 (2022).

In the present case, the basis for the writ was an alleged agreement pertaining to the redemption of the property entered into by the defendants with the plaintiff following the rendering of the judgment of strict foreclosure but before the passage of the law days. Whether a binding agreement or contract exists, either express or implied, is a factual determination to be made by the trier of fact, which, in this instance, was the trial court. See *Avon Meadow Condominium Assn., Inc.* v. *Bank of Boston Connecticut*, 50 Conn. App. 688, 695, 719 A.2d 66 ("existence of a contract is a question of fact to be determined by the trier on the basis of all the evidence" (internal quotation marks omitted)), cert. denied, 247 Conn. 946, 723 A.2d 320 (1998), and cert. denied, 247 Conn. 946, 723 A.2d 320 (1998). Even if we assume without expressly deciding that a writ of audita querela is a proper vehicle for the relief sought by the defendants in the present case, our review of the record and the hearing conducted by the trial court on the defendants' application reveals that the defendants presented no evidence, either with the application or at the evidentiary hearing, from which the court reasonably could have found that the parties entered into a post-judgment agreement under which the defendants could have redeemed the property without tendering the full

amount of the outstanding debt as determined by the court in rendering the judgment of strict foreclosure.

Shalonda Mathis testified at the evidentiary hearing that she made a partial payment of $5800 on November 15, 2013, and provided a photocopy of a check evincing the same, above which was a signature of receipt by the plaintiff's counsel. She never expressly testified, however, that there was an agreement in place with the plaintiff to accept less than the full amount of the judgment rendered, nor was she even asked about the existence of any such agreement. She further testified that she made a second payment to the plaintiff that she understood as constituting payment "in full"; however, she provided no supporting evidence regarding this second payment, nor did she testify that this alleged additional payment was tendered before the running of the law days. Rather, she testified that she did not know when the second payment was made and that she had been unable to locate any receipt or canceled check evincing this second payment.

Although the defendants now argue that they effectively exercised the right of redemption prior to title passing to the plaintiff, such that Sharon Mathis remains the title owner of the unit, it is significant that this argument never previously was advanced by the defendants prior to the filing of the underlying application, despite numerous court filings over the course of one decade seeking to evade ejectment. The trial court was free to consider this history in deciding whether to grant the equitable relief sought. Moreover, the trial court, as the trier of fact, was free to reject the unsupported testimony offered by Shalonda Mathis and to conclude, on the basis of the totality of the evidence in the record, that the defendants had failed to establish the existence of any postjudgment agreement regarding redemption of the property or that the property was redeemed. From our careful review of the record before

us, we cannot conclude that the court abused its discretion in denying the defendants' application as unsupported by the evidence presented, and we reject the defendants' claim to the contrary.

## II

The defendants next claim that the court improperly failed to recognize that the granting of the application was necessary to avoid an inequitable windfall to the plaintiff. The plaintiff argues that this claim was not made before or addressed by the trial court and, therefore, is unpreserved for appellate review. We agree with the plaintiff and decline to review this claim.

As expressly provided in our rules of appellate procedure, "[t]he court shall not be bound to consider a claim unless it was distinctly raised at the trial . . . ." Practice Book § 60-5. "A claim is *distinctly* raised if it is so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked. . . . A claim briefly suggested is not distinctly raised." (Citations omitted; emphasis added; internal quotation marks omitted.) *Swerdloff* v. *AEG Design/Build, Inc.*, 209 Conn. 185, 188, 550 A.2d 306 (1988). In other words, "[o]ur appellate courts, as a general practice, will not review claims made for the first time on appeal. We repeatedly have held that [a] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one . . . ." (Internal quotation marks omitted.) *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 619, 99 A.3d 1079 (2014). "[O]nly in [the] *most exceptional circumstances* can and will [an appellate court] consider a claim, constitutional or otherwise, that has not been *raised and decided* in the trial court." (Emphasis added; internal quotation marks omitted.) *Blumberg Associates World-*

*wide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 142, 84 A.3d 840 (2014).

In the present case, as argued by the plaintiff, the defendants never *distinctly* raised their windfall argument to the trial court nor did the court discuss that issue in its decision. Although the defendants argue that the "plaintiff itself firmly invoked the trial court's duty to do equity to the parties in these proceedings" by affirming in its objection to the application that the writ of audita querela is an equitable remedy, which duty arguably would include avoiding any inequitable windfall, they point to nothing in the record demonstrating that the windfall issue was distinctly raised to the court. The defendants' suggestions in their reply brief that they "essentially" presented a windfall argument or that the court should have gleaned from the closing argument of the defendants' counsel at the hearing on the application that the defendants were advancing such a claim are unavailing. Accordingly, we decline to review this claim.[8]

---

[8] Certainly, a "substantial and undeserved windfall would not . . . [comport] with principles of equity." *Amresco New England II, L.P.* v. *Colossale*, 63 Conn. App. 49, 55, 774 A.2d 1083 (2001). Even if we were to conclude, however, that the defendants' windfall claim properly is before us for review, the evidentiary record and factual findings by the trial court provide an inadequate record on which to reasonably conclude that the plaintiff has unfairly benefitted or received a financial windfall, particularly in the face of the defendants' continued possession and occupancy of the unit. See *Clelford* v. *Bristol*, 150 Conn. App. 229, 236, 90 A.3d 998 (2014) ("[if] presented with an inadequate record, we are precluded from reviewing the claim on appeal"). Although there is some evidence in the record that the defendants have made some monthly common expense payments to the plaintiff as well as some mortgage and property tax payments with respect to the foreclosed unit, nothing in the record compels the conclusion that such payments exceeded what would be reasonable use and occupancy payments or otherwise inured inequitable benefits on the plaintiff. Moreover, to the extent that the defendants' windfall claim includes an argument that a judgment of foreclosure by sale would have been more equitable under the circumstances of this case than a judgment of strict foreclosure, any such argument was abandoned by the defendants' failure to appeal from the judgment of foreclosure.

### III

Finally, the defendants claim that the court improperly declined to admit into evidence two exhibits offered by the defendants. We disagree.[9]

The following additional facts are relevant to our discussion of the defendants' evidentiary claims. At the hearing on the application, after the defendants presented their witnesses, the defendants' counsel asked the court to admit into evidence as full exhibits several documents that were previously marked for identification only. The court declined to admit two of these exhibits on the basis of objections raised by the plaintiff's counsel.

First, the defendants' counsel offered what had been marked as exhibit A, which was a March 13, 2023 letter written by an attorney for Select Portfolio Servicing, Inc.,[10] to the defendants' counsel regarding the status of a mortgage on the subject unit. The plaintiff's counsel objected to its admission on both relevancy and hearsay grounds. The defendants' counsel appeared to argue to the court that exhibit A fell within the hearsay exception for a statement by a party opponent. See Conn. Code Evid. § 8-3 (1).[11] The plaintiff's counsel responded that

---

[9] At oral argument before this court, the defendants' counsel, during his rebuttal, seemed to suggest that the defendants were abandoning their evidentiary claims. Because this statement was somewhat ambiguous, however, we will review the claims as briefed.

[10] After the judgment of strict foreclosure was rendered, the mortgage was assigned to U.S. Bank National Association, not in its individual capacity but solely in its capacity as Indenture Trustee of CIM Trust 2021-NR2 (U.S. Bank). Select Portfolio Servicing, Inc., is the mortgage servicer for U.S. Bank.

[11] Section 8-3 (1) of the Connecticut Code of Evidence excepts from the hearsay rule "[a] statement that is being offered against a party and is (A) the party's own statement, in either an individual or a representative capacity, (B) a statement that the party has adopted or approved, (C) a statement by a person authorized by the party to make a statement concerning the subject, (D) a statement by the party's agent, servant or employee, concerning a matter within the scope of the agency or employment, and made during the existence of the relationship, (E) a statement by a coconspirator of a party while the conspiracy is ongoing and in furtherance of the conspiracy,

the declarant was not a party to the action and, therefore, any statements in the letter were inadmissible hearsay. The court agreed that the statements in the letter were hearsay and sustained the objection of the plaintiff's counsel.

The defendants' counsel also sought to admit exhibit C, a copy of a lis pendens that purported to give notice of a 2020 foreclosure action that the plaintiff had filed against the defendants on the basis of unpaid common expenses and assessments. The defendants' counsel argued that "[t]he only reason you would . . . file a lis pendens on the land records referring to a foreclosure action is if the property was redeemed . . . ." The plaintiff's counsel objected to the admission of the lis pendens on authentication grounds, arguing that it was not a properly certified document and, thus, was not self-authenticating. The court agreed, stating: "So, while the lis pendens may well have relevance, unfortunately what is necessary to get it into evidence is not before the court today, so the objection is sustained."

Our standard of review regarding challenges to a trial court's evidentiary rulings is well settled. "To the extent [that] a trial court's admission [or exclusion] of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. . . . We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law . . . for an abuse of discretion."

(F) in an action for a debt for which the party was surety, a statement by the party's principal relating to the principal's obligations, or (G) a statement made by a predecessor in title of the party, provided the declarant and the party are sufficiently in privity that the statement of the declarant would affect the party's interest in the property in question. . . ."

(Internal quotation marks omitted.) *Barclays Bank Delaware* v. *Bamford*, 213 Conn. App. 1, 18, 277 A.3d 151, cert. denied, 345 Conn. 905, 282 A.3d 982 (2022). In addition to the burden of demonstrating an erroneous evidentiary ruling, a party seeking reversal of a judgment must also demonstrate that the challenged ruling was harmful, meaning that it likely affected the outcome. See *Downing* v. *Dragone*, 216 Conn. App. 306, 343, 285 A.3d 59 (2022), cert. denied, 346 Conn. 903, 287 A.3d 601 (2023).

With respect to exhibit A, the defendants argue that the court improperly excluded the letter as hearsay because the statements therein fall under the hearsay exception for statements by a party opponent. Although the defendants sought to offer the statements in the letter against the plaintiff, who is a party, the letter did not include statements of the plaintiff or any other party to the action but, rather, contained statements of an attorney for a nonparty mortgage servicer. Accordingly, the court correctly concluded that the letter, which the defendants offered for the truth of the matters asserted therein, constituted inadmissible hearsay, and it properly declined to admit it into evidence.

With respect to exhibit C, the lis pendens, the defendants argue that the court improperly excluded it from evidence on the ground that it was not properly authenticated. Under the Code of Evidence, "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required if the offered evidence is self-authenticating in accordance with applicable law." Conn. Code Evid. § 9-1 (b). As noted in the commentary to the rule governing authentication of public records, "although certified copies of most public records are 'self-authenticating' . . . certification is not the exclusive means by which to authenticate a public record." (Citation omitted.) Conn. Code Evid. § 9-3, commentary. "It generally is recognized that a public record may be authenticated simply by showing that the record

purports to be a public record and comes from the custody of the proper public office." Id. Copies of documents recorded on a town's land records generally are considered certified if they are affixed with the seal of the town by the town clerk or the town clerk's legally qualified assistant. General Statutes § 7-23.

Here, although the lis pendens contained a bar-coded label showing the volume and page number as well as the time and date that it was recorded on the Hartford land records, it did not contain a town seal demonstrating that it was a certified copy and was, thus, self-authenticating. Even if we assume for the sake of argument, however, that the court excluded the lis pendens from evidence in error, we are not persuaded that this exclusion was harmful because it was merely cumulative of other properly admitted evidence.[12] Thus, the defendants have failed to demonstrate that the court's failure to admit the lis pendens, even if error, was harmful.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[12] The defendants argue that the lis pendens noticed a new foreclosure action, which could be viewed as an implicit admission by the plaintiff that the defendants previously had redeemed the property. The plaintiff's current president, Corey Fleming, however, testified at the hearing on the application that he had instructed the plaintiff's counsel to initiate a new foreclosure action after he became president in 2017, and that he later had been surprised to learn that the plaintiff already owned the defendants' unit. Accordingly, even if the lis pendens had been admitted, it would have been cumulative of Fleming's testimony. See *Duncan* v. *Mill Management Co. of Greenwich, Inc.*, 308 Conn. 1, 23–24, 60 A.3d 222 (2013) (in evaluating harmfulness of evidentiary error, reviewing court considers whether improperly admitted or excluded evidence was "merely cumulative of other validly admitted testimony" (internal quotation marks omitted)). Moreover, the mere fact that the plaintiff initiated an additional foreclosure action does not mean that a court would have determined that the plaintiff was legally entitled to any additional relief, because the filing of the action would not have altered the undisputed fact that title to the property already passed to the plaintiff by operation of law when the defendants failed to pay off the total debt prior to the passage of the law days.